## THE CALIFORNIA STEAM NAVIGATION COMPANY v. WRIGHT.

The want of capacity in a plaintiff to sue should be specifically set up in the answer. The general issue is not sufficient.

Where the defendant being the owner, in whole or in part, of certain steamers, in consideration of a sum of money paid to him, covenanted that he would not run, or suffer to be run, or employed, those steamers on certain waters of the State: *Held*, that he was not released from his covenant by a sale of the steamers, or of his interest therein.

A voluntary promise by the holder of defendant's agreement, that he would not assign it, was not binding; and where the contract was in fact made for the benefit of a company in which the obligee held stock, with knowledge of that fact on the part of the defendant, such promise was in fraud of the company's rights, and the defendant could not avail himself of it.

Nor if the fact is that defendant was kept in ignorance by the obligee of the contract, that he was acting for the company, can the defendant avail himself of the fact as a defence, no fraud being alleged, while he retains the consideration paid for his contract. He cannot retain the consideration on the ground of fraud, and resist the payment of the penalty of an infraction of his contract on the same ground.

APPEAL from the District Court of the Twelfth Judicial District.

This was an action upon a contract made by the defendant, being the owner of or interested in certain steamboats, with Richard Chenery, also the owner of steamboats, whereby the defendant, in consideration of fifteen thousand dollars to be paid by Chenery, covenanted that he would not "run, or suffer to be run, or employed, the steamer West Point, or other steamer" in which he was interested, to navigate certain waters of this State at any time within three years from the date of his contract, which was made February 21st, 1854, and that if he failed to comply with his contract, he would pay to Chenery, or his assigns, the sum of fifteen thousand dollars. The contract was, on March 1st, 1854, assigned by Chenery to the plaintiff, then and now a corporation, organized under the laws of this State. The contract was assigned to plaintiff in the fall of 1855. The complaint alleges a breach of the contract by defendant, and prays for judgment for fifteen thousand dollars.

The defendant demurred to the complaint, and the demurrer being sustained by the Court below, and judgment entered for defendant, the plaintiff appealed to this Court, when the judgment of the Court below was reversed, and the cause remanded. 6 Cal. R., 258.

The defendant then answered in the Court below, and the plaintiff recovered a judgment for fifteen thousand dollars, from which defendant appealed.

It was shown by the defendant, on the trial, that he had parted with his interest in the vessels concerning which he contracted,

before the alleged breach of contract occurred.   It was proved that at the date of the contract, the defendant was interested in the steamer Goliah, and that she did actually run upon the streams specified in the contract, and from which she was thereby to be excluded, within three years from the date of the contract.   It was also shown that Chenery had ceased to be interested in steamboats before the alleged breach, and had assigned the agreement after defendant had parted with his in the Goliah.   The defendant sold his interest in August, 1854; Chenery ceased to be interested in steamboats in April, 1855. The assignment of the agreement to plaintiffs was made in August, September, or October, 1855; written notice of the assignment was given to defendant, by the plaintiff, October 9th, 1855. The Goliah was put upon the Sacramento River, (one of the streams prohibited to her by the contract,) October 5th, 1855, and taken off in the middle of November, 1855.   On September 19th, 1855, Chenery wrote a letter to the defendant, in which he asked as a favor, that if defendant sold his vessel, (the Goliah,) he should be informed of it before the sale, in order that his (Chenery's) creditors might sell his stock, which was pledged to them, to better advantage.   It was proved, however, that the defendant knew before he sold his interest in the Goliah, that the contract was made by Chenery, for the benefit of the company, the plaintiff herein, then about to be formed, and that the plaintiff paid the fifteen thousand dollars, and twenty-five hundred dollars additional, agreed to be paid, if the West Point was sent to sea.

*Crockett and Page* for Appellant.

1. The Court erred in admitting in evidence the plaintiff's charter or act of incorporation; and we maintain, a steamship or steamboat company cannot be incorporated under the act of 1853, but must conform to the act of 1850, which this charter does not profess to do.

2. We submit, that upon a fair and reasonable interpretation of the contract, when Wright ceased to have any interest in, or control over the Goliah, he was not responsible for her future employment; and it was no breach of Wright's covenant for Brown, who then owned her, to employ her in the Sacramento trade.   We think the obvious meaning of Wright's undertaking was, that no boat in which he was then, or might thereafter become interested, or over which he exercised control, should, whilst he was interested in, or exercised control over it, engage in the prohibited navigation, during the time specified.   The object of the contract was to avoid a competition with the boats owned or controlled by Wright, whilst so owned or controlled by him, and not to make him responsible for the employment

of boats in which he had no interest, and over which he had no control.

A different construction of the contract would have had the effect, practically, to prevent Wright from selling any interest he owned in steamboats, during the three years; and this would be against public policy, as tending to prevent the alienation of property, and operating as a restraint upon trade. These considerations are entitled to great weight in respect to steamboats, which are now the great vehicles of commerce; and the untrammeled transmission of which, from hand to hand, is indispensable to the necessities of trade. If, therefore, the effect of the contract was to restrain Wright in the sale of his interest, it was void as against public policy. Story on Cont.; § 546.

3. The proof shows, that before the alleged breach of the contract occurred, Chenery had wholly ceased to be interested in steamboats, which fact was known to Wright, who was ignorant, however, that the contract had been assigned to the plaintiff; and it was not in fact, assigned, until about the time of the alleged breach; no notice of the assignment having been given to Wright, until the ninth of October, 1855, which was four days after Brown had commenced running the Goliah in the Sacramento trade. On the nineteenth of September, Chenery, whom Wright believed to be still the holder of the contract, addressed a letter to Wright, evincing clearly his knowledge that the boat was about to be sold to Brown, and in that event, would be placed in the Sacramento trade. He does not remonstrate against it; but, on the contrary, evidently concedes the right of the new owner to employ her as he pleases, without any liability upon Wright; but foreseeing that such employment of the boat might impair the value of the stock of the company, he asks, as a favor, to be notified in advance of the sale, so that his stock, held by his creditors, may be sold out before the sale of the boat. He manifestly interprets the contract as permitting Wright to sell, without being responsible for the future employment of the boat; and it is a well established rule, that when the parties interpret their own contracts, the Courts will give them the same interpretation. So far as Wright was concerned, he had a right to treat Chenery as the owner of the contract, being then ignorant of the assignment; and when Chenery concedes, as he evidently does in his letter, the right of the purchaser to employ the boat as he pleases, without any liability upon Wright, the latter was fully justified in acting on that construction of the contract.

4. Chenery, at the date of the alleged breach, having ceased to be interested in navigation, as was well known to Wright, and the latter having no knowledge of the assignment, had the right to treat his obligation as at an end, and Chenery's letter manifestly induced the belief that he should make no opposition

to the contemplated employment of the boat in the Sacramento trade.

5. The plaintiff was not competent in law to take an assignment of the contract, and enforce the same, even though its act of incorporation was conceded to be valid. The company was incorporated to navigate the waters of this State with steam-vessels, for the transportation of freights and passengers; and though it would be authorized to do any act, fairly and legitimately within the scope of its charter, or necessary to the complete enjoyment of the franchise, we maintain that this does not include a power to enter into contracts, or take an assignment of contracts made with other parties, binding such other parties not to engage in navigation.

What powers may be exercised by corporations, as incidental to the purposes of their creation, is fully set forth in Angell and Ames on Corp., §§ 256 to 276. But we invite the especial attention of the Court to the following cases : State v. Com'rs, etc., 3 Zabr., 510; Abbott v. Balt and Rapp. St. Packet Co., 1 Md. Chy. Dec., 542; The Pennsylvania Co. v. Dandridge, 8 Gill. & John., 248; Coleman v. Eastern County Railway, 10 Beavan, 1.

6. The concealment by Chenery from Wright, of the fact that the company was about to be organized, and that the contract was really for its benefit, was a fraud upon Wright, which vitiated the contract. The profits to be derived from running his boats, depended upon the extent of the competion. With an opposition conducted by Chenery, Minturn, and others, he might, and probably did anticipate small profits, and was therefore willing to retire from the trade for a small price; but with the boats of these several persons concentrated into the hands of a corporation, he might, for aught that appears, have considered his boats more valuable, and his chances for large profits better.

*Janes, Lake & Boyd*, for Respondent.

Most of the objections raised by the appellant to this judgment, were passed upon by this Court, when this case was here upon demurrer to the complaint.

The main ground of error now insisted on by the appellant is, that the plaintiff is not a corporation; or, in other words, has not legal capacity to sue.

We submit that this objection comes too late. It should have been specially set up in the answer.

It is not necessary to consider whether, at common law, a plea of the general issue put in issue the existence of the corporation.

The decisions on that point are conflicting.

In Massachusetts, New Hampshire, Maryland, Kentucky, and Ohio, it is held that such defence must be specially pleaded, (see

California Steam Nav. Co. v. Wright.

1 Mass., 159; 6 New Hampshire, 527; ibid, 197; 5 Har. & J., 489; 7 Monroe, 584;) while in New York, it was held that the general issue put the plaintiff to the proof of its corporate existence. The inconvenience of such rule induced the Legislature to interpose, and there is now a statute of that State which provides that such defence must be specially pleaded.

Under our Practice Act, we insist such defence should be specially set up by answer.

Section forty provides for cases in which the defendant may demur to the complaint, and among the causes of demurrer "that the plaintiff has not the legal capacity to sue."

Section forty-four enacts that " when any of the matters enumerated in section forty, do not appear on the face of the complaint, the objection may be taken by answer."

Section forty-five provides that "if no such objection be taken, either by demurrer or answer, the defendant shall be deemed to have waived the same," excepting only the objection to the jurisdiction of the Court, and the objection that the complaint does not state facts sufficient to constitute a cause of action.

The second point made by the appellant, requires only to be re-stated in a condensed form, to show its unsoundness.

The proposition is, that Wright, after receiving seventeen thousand five hundred dollars, in consideration of which sum he covenants "that he will not run, or suffer to be run or employed," the steamer Goliah, for a given period of time, might the next day sell the steamer, and the purchaser would be at liberty to navigate her where he pleased, and it would be no breach of the contract on the part of Wright.

Such was neither the letter nor the spirit of the contract. The covenant on the part of Wright was that his steamboats should not run within the stipulated limits, for which covenant he was paid a large sum of money. Nothing could release him from a faithful performance of the covenant short of an express license. No license was pleaded or attempted to be proved.

On the contrary, the evidence shows that Wright knew, shortly after entering into the contract, that it was, in fact, made in contemplation of the formation of the Navigation Company, and for its benefit, and so knowing, he from time to time received the whole consideration for the covenant on his part, seventeen thousand five hundred-dollars, from the Company.

BURNETT, J., delivered the opinion of the Court—TERRY, C. J., and FIELD, J., concurring.

This was an action to recover a specified sum as stipulated damages.

The case was before this Court in July, one thousand eight

hundred and fifty-six, when the judgment of the Court below sustaining the demurrer to the complaint was reversed, and the cause remanded for further proceedings. The defendant answered, and the plaintiff had judgment, from which the defendant appealed.

The first point made by the learned counsel of appellant is that the Court erred in admitting in evidence the plaintiff's charter. They insist that a steamboat company cannot be incorporated under the act of one thousand eight hundred and fifty-three.

But we are not permitted to examine this question, as the answer did not properly put it in issue. The answer was a simple denial of the allegations of the complaint in general terms, except as to one point. Under the provisions of the fortieth, forty-fourth and forty-fifth sections of the Practice Act, the want of capacity in the plaintiff to sue, should have been specially set up in the answer. The general issue is not sufficient. 1 Mass., 1, 159; 6 N. H., 527; 197; 7 Mon. Ky. R., 484.

The want of legal capacity to sue is a personal disability; and if the defendant intends to set up such a defence, he should state so distinctly. The general denial relates to the other facts alleged concerning the contract. The defence, that the plaintiff has not legal capacity to sue, goes to the entire action, constituting a full separate defence, and should be separately stated.

The second point made by the defendant is "that upon a fair and reasonable interpretation of the contract, when Wright ceased to have any interest in, or control over the Goliah, he was not responsible for her future employment."

In the agreement, the defendant, Wright, stipulated that, he would not run, or suffer to be run, or employed, the said steamer West Point, or any other steamer in which he is now or may hereafter be interested."

It appears, from the testimony, that defendant, at the time he made the covenant, owned one-third of the Goliah, but that he had parted with his interest to his two sons, before the steamer was put upon the Sacramento River. And his counsel insist that under the agreement, properly construed, "it was a *present*, *subsisting* interest, or control, at the *date* of the alleged breach of the covenant, which was to determine his liability; and not an interest held *before* or *after* the act complained of."

It is true that the interpretation making defendant liable *after* he had parted with his interest in the Goliah, would prevent him from selling his interest in the vessel, except at his peril. He could, however, have protected himself by binding the purchaser not to employ her in the prohibited trade. But, on the other hand, if we adopt the interpretation of defendant's counsel, the plaintiffs' assignor made a very foolish arrangement, for if Wright could sell the vessels in which he was then interested, and thereby absolve himself from all responsibility, then

the substantial purposes of the agreement would have been defeated.

The language of the agreement is too specific, definite, and certain, to be mistaken. The object of the covenant was to exclude from the trade certain vessels then belonging to defendant, in whole or in part, and also all others that might thereafter belong to him at any time within the stipulated period of three years. And this construction is supported by the stipulation that the vessels themselves were pledged to secure the due performance of the contract on his part.

The third point made by defendant's counsel is, that at the time of the alleged breach, Chenery, the assignor of plaintiff, had ceased to be interested in steamboats, and the assignment of the agreement was made *after* defendant had sold his interest in the vessel. It appears defendant sold his interest, August, 1854; Chenery ceased to have any interest in steamboats in April, 1855; the assignment of the agreement was made in August, September, or October, 1855; written notice of the assignment was given to defendant by the plaintiff, October, 9, 1855; the Goliah was put upon the Sacramento River, October 5, 1855, and taken off on the middle of November, 1855. On the nineteenth of September, 1855, Chenery wrote a letter to defendant, in which he asked defendant, as a particular favor, in case he sold his vessel, to inform him before the sale, that Chenery's creditors might sell his stock, (which was pledged to them as collateral security,) to better advantage. It is insisted that these facts show that Chenery, who then held the agreement, considered Wright authorized to sell, and that he would not be responsible if his vendors should put the vessel into the prohibited trade; and that defendant was misled by the acts of Chenery, and induced to take the course he did by the latter's implied consent. But the proof shows that defendant had sold all his interest in August, 1854, and that the agreement was in fact made by Chenery for the benefit of the company then about to be incorporated; that the seventeen thousand five hundred dollars agreed to be paid by Chenery was paid by the company in checks drawn by its officers upon its bankers, and that defendant knew these facts before he sold his interest in the vessel. It is true that Chenery, in September, 1855, told defendant he had not assigned, and would not assign the contract to any one.

There can be no doubt but that the company would be responsible for everything that Chenery was permitted to do, in his own name before the assignment, provided the defendant was ignorant of the fact that the contract was made for the benefit of the company. Osborn v. Hendrickson, January, 1857.

The promise of Chenery, that he would not assign the contract to any one, was made without consideration, and did not bind him, and was in fraud of the company. The defendant had

no right to receive and act upon such a promise, when he knew the facts.

The next point raised by the defendant is that the plaintiff was not competent in law to take an assignment of the contract, and enforce the same, even though its act of incorporation was conceded to be valid. The company being chartered for the purposes of navigation, it is insisted that such an act did not come within the scope of its charter. There is certainly a great deal of force in this objection, but as it was necessarily decided by this Court on the former appeal, the question must be considered as put at rest in this case, and we are not at liberty to express any opinion in regard to it.

The last point necessary to notice is, that the agreement was void, because Chenery concealed from defendant the fact that he was acting for the company then about to be organized.

If we concede, for the sake of argument, that Chenery was guilty of such fraud as would void the contract, and that the company was bound by his acts, could the defendant avail himself of such defence under the answer in this case? We think not. No fraud was alleged in the answer. Nor could the defendant avail himself of such a ground, and still retain the seventeen thousand five hundred dollars received by him. He should have proceeded promptly to set aside the agreement by a direct suit for that purpose, when he discovered the fraud, and by offering to return what he had received. The parties must be placed in *statu quo*. To say that Wright could keep all the money, upon the ground of fraud, and then resist the payment of the penalty upon the same ground, would be clearly unjust and illogical. If the agreement was valid for the purpose of the payment, it must be valid for the penalty. It must be good or void for both purposes.

Judgment affirmed.