GEORGE W. HILLMAN, RESPONDENT, *v.* W. T. SHANNAHAN AND WILLIAM WADHAMS, APPELLANTS.

INDEMNITY BOND—WHEN NOT ASSIGNABLE.—Where the purchaser of a business takes a bond from the seller conditioned in a certain sum as liquidated damages that the seller will not engage in business of the character sold for a stated period, such bond can only be enforced for the protection and indemnity of the buyer alone, while carrying on the business in person, and will not be extended to his assignee. In such case, there is no right of action to assign until after a breach of the conditions of the covenant.

APPEAL from Multnomah County.

The facts are stated in the opinion of the Court.

*Bronaugh & Catlin,* for Appellants.

. The bond was executed for the personal protection and indemnity of Tileston alone and there is no privity between appellant and respondent. (*Cal. Navigation Co.* v. *Wright,* 6 Cal. 258.) The absence of the words "heirs" or "assigns" in the bond, is evidence of a want of intention in the parties to make the bond assignable, and the law will construe the contract according to the intention of the parties. (*Dunlap* v. *Gregory,* 6 Seld. 241; *Moffit* v. *Coffin,* 3 Ogn. 426.) It has been held that the parties to a covenant of this kind cannot make such covenant assignable. (*Hurd* v. *Curtis,* 19 Pick. 459; *Webb* v. *Russel,* 3 T. R. 402.) If the lessee of *personal goods* covenants to deliver the goods or such price for them, this covenant shall not bind the assignee, for it is but a personal contract and wants such privity as is between the lessor and lessee and his assigns of the land in respect of the reversion. (*Spencer's Case,* 1 Smith's L. Cas. 118.) Covenants will not run with personal property. (Addison on Contracts, 321; *Splidt* v. *Bowles,* 10 East Rep. 279.)

Until the happening of a breach of the condition of the bond Tileston had no interest that was assignable at law. (22 Barb. N. Y. 110; 7 How. P. R. 492; 4 Duer, 74; *Mitchell* v. *Winslow,* 2 Story R. 630; *Field* v. *The Mayor of New York,* 2 Seld. 186; *Bibend* v. *Insurance Company,* 30 Cal. 78; *Coolidge* v. *Ruggles,* 15 Mass. 338; 46 Barb. N. Y. 84; 8 Bacon Ab. 280; *Jackson* v. *Waldron,* 15 Wend. 180.) When the restraint of a party from carrying on a trade is larger and wider than the protection of the party with whom the contract is made requires, the contract is void. (*Hitchcock* v. *Coker,* 6 Adolph. & Ellis, 106; *Chappelle* v. *Brockway,* 21 Wend. 157; *Jarvis* v. *Peck,* 10 Paige Ch. 123; *Lawrence* v. *Kidder,* 10 Barb. N. Y. 641.)

When Tileston sold out and went away without notifying respondent of the assignment, the latter had a right to suppose that the purposes of the contract were ended. (*Doll* v. *Anderson,* 27 Cal. 243; Williams on Per. Prop. 321; *Comstock* v. *Farnum,* 2 Mass. 97; *Van Veehten* v. *Graves,* 4 John. 403.)

A policy of insurance is not assignable before loss so as to enable the assignee to recover after loss. After loss it becomes a debt and may be assigned. (2 Parson. on Con. 450; *Carroll* v. *Boston Marine Ins. Co.*, 8 Mass. 515; *Wilson* v. *Hill*, 3 Metcalf, 68; 1 Iowa, 408.)

*J. H. Reed*, for Respondent.

This was not an equitable assignment and under the protection of a Court of Chancery, and to have brought suit in the name of Tileston for the use of respondent would have been in contravention of our statute, which requires actions to be prosecuted in the name of the real party in interest. (Voorhees' N. Y. Code, 96; 2 Seld. 179.) This was not a contract in restraint of trade and the assignment was valid. (8 Mass. 223; 3 Bing. 322; 6 Adolph. & Ellis, 438; Id. 959; *Mitchell* v. *Reynolds*, 1 Smith L. Cas. 181 and notes; 1 Estee Pl. 58; 21 Wend. 157; 22 Wend. 201; 9 Cal. 325.)

A policy of insurance may be assigned before any liability is fixed on the company by the burning of the property or the death of the party insured, and the company will be liable to the assignee after the event happens fixing their liability. (*Hurlstone* v. *Bonds*, 9 L. L., 1 Leigh's N. P. 639; *Wright* v. *Rider*, 36 Cal. 356; 2 Abb. Dig. 75; 6 Cal. 258.)

By the Court, PRIM, C. J.:

The bond upon which this action is predicated was entered into between appellants and one Tileston, the assignor of respondent. Shannahan, one of the appellants, was in partnership with respondent in a music and picture store in the city of Portland, and sold out his interest in the concern to one Tileston. On the same day the appellants jointly executed to said Tileston a bond in the sum of $500 liquidated damages, to be paid to Tileston in case Shannahan should at any time within five years thereafter engage in the music and picture business in said city of Portland. It also appears that prior to the commencement of this action Tileston sold out all his interest in this store to his partner, the present respondent, and left the State. After Tileston sold out and left the State, and prior to the com-

mencement of this action, Shannahan purchased several pianos and exhibited them for sale, and sold three of them at a profit of thirty dollars each. At the time Tileston sold out his interest in the business to respondent, he also turned over to him the bond; and afterward, and prior to the alleged breach thereof by Shannahan, he transferred it to him by assignment in writing. The Court below, in construing the bond, found as a matter of fact that it was the intention of the parties that it should be for the protection and advantage of the business sold, whether carried on by said Tileston in person, or by his assignees. The Court also found as a conclusion of law, that said bond was given as a protection in business, and as such was assignable with the transfer of the business from Tileston to Hillman.

As I understand the ruling of the Court, it amounts to this: The covenant with Tileston was not a mere personal contract with him for the protection of his own interest in the business in which he was engaged at the time, and while he should continue in the business personally, but it was such a covenant as passed with the business, and thus became attached to and ran with it, so as to give his assignee the same rights under the bond he had while carrying on the business personally. This seems to be the only theory consistent with the idea that Shannahan had committed such a breach of the bond as would enable respondent, as assignee, to maintain this action in his own name, unless it was for a breach committed while Tileston was engaged in the business himself. This is not pretended, as the only breach complained of occurred after he had sold his interest in the business and left the State.

There is a doctrine in the law-books that certain covenants made by parties standing in certain relations to each other, in relation to real estate, run with the land, in whose hands soever it may come. But I am not aware that any case has been cited in which it has been held that this doctrine is applicable to contracts or covenants made in relation to personal property.

It was resolved in *Spencer's Case* (1 Smith's Lead. Cas. 117), "If a man leases sheep, or other stock of cattle, or

any other personal goods for any time, and the lessee cove-
nants for him and his assigns at the end of the time to de-
liver the like cattle or goods as good as the things letten
were, or such price for them, and the lessee assigns the sheep
over, this covenant shall not bind the assignee, for it is but
a *personal contract* and wants such *privity* as is between the
lessor and lessee and his assigns of the land in respect of
the reversion.   But in the lease of personal goods there is
not any *privity* nor any reversion, but merely a thing in
action in the personalty, which cannot bind any but the
covenantor, his executors or administrators who represent
him."

In *Hurd* v. *Curtis* (19 Pick. 459), the owners of different
mills, who drew the water which they used from the same
stream and dam, entered into an agreement by which they
covenanted to use water-wheels of a certain power and con-
struction.   Subsequently, one of the mills was conveyed to
the defendant and an action brought against him for a viola-
tion of this agreement.   The Court held the covenant *per-
sonal,* and that it could not be extended beyond the original
parties, as there was no privity in estate or contract between
plaintiff and defendant, although the covenant in that case
was by its terms extended to heirs and assigns, etc.   (*Webb*
v. *Russel,* 3 T. R. 402.)

The case of *The California Steam Navigation Co.* v. *Wright*
is cited and relied upon.   In that case, Wright, the de-
fendant, being the owner of certain steamboats, entered
into a contract with one Chenery, also the owner of boats,
whereby, in consideration of fifteen thousand dollars, to be
paid by Chenery, Wright covenanted that he would not per-
mit any boat in which he was interested to navigate certain
waters of the State, at any time within three years from the
date of the contract; and if he failed to comply with his
contract, he would pay to Chenery, or his assigns, etc., the
sum of $15,000.   This contract was assigned by Chenery
to the plaintiff; whether before or after breach does not
appear.   It does appear, however, that Wright was notified
of the assignment, and received of the plaintiff the full sum
of money which Chenery had agreed to pay.   The Court

said : "It has always been the policy of our law to construe contracts according to the intention of the parties, and it was evidently the intention of the parties that the contract should be assignable, as it is made payable to Chenery, his heirs," etc. We think it is very properly urged in the case at bar, that "if this rule is to work both ways, then the lack of such words as 'heirs,' 'assigns;' etc., is evidence of the want of such intention."

But in the California case the Court further said: "And as it appears * * * * that the defendant was notified of the assignment, and received from. the plaintiff the full sum of money which Chenery contracted to pay, he is estopped from denying that the contract was assignable."

In the case under consideration, there are no such words as heirs or assigns, to indicate that it was the intention of the parties that the contract should be assignable, nor are there any circumstances from which it could be inferred that a new and original promise was made to Hillman at the time the bond and business went into his hands, or that would operate to estop appellants from denying that the bond was assignable. Then we hold that this bond was executed for the *personal* protection and indemnity of Tileston *alone,* while carrying on business in *person,* and did not extend to his assignee, as there was no privity between him and appellants.

It is insisted by respondent that the bond is a chose in action, and as such was assignable by Tileston to him, which assignment gave him the same right to maintain the action in his own name, as the real party in interest, that Tileston had. It appears from the allegations of the complaint that the assignment took place on the 8th day of July, 1870, and that the alleged breach did not occur until afterwards, to wit, on the 20th day of July, 1870. The bond being a conditional one, Tileston himself could have no right of action upon it against the obligor until there was a breach of that condition by Shannahan. Then how could Tileston assign that to another which he did not have himself? A chose in action is defined by Burrell's Law Dictionary to be a *thing* in *action*—a thing of which one has

not the possession or actual enjoyment, but only a right to *demand* it by *action*. 2 Kent, 356, says: "Money due on a bond, note or mortgage or other contract is a *chose in action* —a right to *recover damages* for a breach of covenant or a tort is a chose in action. There must be something *due* on a bond, mortgage or other contract, before the party holding it can bring his action to recover the amount due." Tileston had the bond in his possession, but until the happening of a breach of the condition of it he had no right of action or chose of action to assign; his interest in the bond prior to that time being a mere possibility or contingency, not assignable at law. Sec. 27 of our Code does not alter the rule as to the assignability of choses in action, so as to make those assignable which were not so before; but it simply provides that the real party in interest may sue in his own name, without being required, as formerly, to sue in the name of his assignor, for his use. (22 Barb. 110.)

Respondent, in his brief, asks: "Cannot a policy of insurance be assigned before any liability is fixed on the company by the burning of the property, or the death of the party insured, and will not they be liable to the assignee after the event happens fixing their liability?" This question has long since been answered and settled in the negative by the ablest jurists of both England and America. In *Lynch* v. *Dalzell* (4 Bro. Parl. Rep. 431), which was an insurance against fire, Lord Chancellor King said:

"These policies are not insurances of the specific things mentioned to be insured, nor do such insurances attach on the realty, or in any manner go with the same as an incident thereto, by any conveyance or assignment, but they are only special agreements with the persons insuring against such loss or damages as *they* may sustain. The party insured must have a property at the time of the loss, or he can sustain no loss, and consequently can be entitled to no satisfaction." "These policies are not in their nature assignable, nor is the interest in them ever intended to be transferable from one to another, without express consent of the office."

The same doctrine was asserted by Lord Hardwicke in the

case of *Saddler's Company* v. *Babcock* (2 Ark. 534). In the case of *Carpenter* v. *The Providence Washington Insurance Company* (16 Peters, 503), Story, J., said: "An assignment of a policy by the insured only covers such interest in the premises as he may have at the time of the insurance and at the time of the loss. It is the property of the insured, and *his alone*, that is designed to be covered, and when he parts with his title to the property, he can sustain no future loss or damage by fire, but the loss, if any, must be that of his grantee. The rights of the assignee cannot be more extensive under the policy than the rights of the assignor; and as to the grantee of the property, he can take nothing by the grant in the policy, since it is not in any just or legal sense attached to the property or an incident thereto."

The same doctrine is laid down by Chief Justice Shaw in the case of *Wilson* v. *Hill* (3 Met. 68, 69.) He said: "An insurance of buildings against loss by fire  *  *  * is in effect a contract of indemnity with the owner or other person having an interest in the preservation of the buildings  *  *  * to indemnify *him* against any loss he may sustain, in case they are destroyed or damaged by fire. The contract was to indemnify the assured; if *he* has sustained no damage, the contract is not broken."

He further said: "These considerations, however, do not apply to a case where the assured, *after loss*, assigns his right to recover that loss."

It would then amount to a right of action, which could be assigned by him the same as any other chose in action. And so in the case under consideration, at any time after the happening of a breach of the condition of the covenant, Tileston would have had a right of action to recover the damages agreed upon in the bond. And having a right of action, there can be no doubt that such right was assignable to another, who could maintain an action in his own name, as the real party in interest. But in this case it appears he undertook to assign his right of action prior to the happening of any breach of the covenant; consequently the assignment amounted to nothing, as at that time he had no right of action to assign.

The Court being of the opinion that the judgment of the Court below cannot be sustained upon the facts appearing in the record in this case, it is ordered that the judgment of the Court below be reversed.

Mr. Justice McArthur dissented.