## WEBSTER *v.* BUSS.

An agreement to relinquish a business and not to carry it on thereafter, limited as to place but unlimited as to time, is not void as being in restraint of trade.

A bond conditioned "that the obligor will entirely relinquish to the obligee the teaming business in the vicinity of M. meaning over and on the whole route run by the obligor and in no way directly or indirectly to interfere with or cause the same to be interfered with," is valid.

An action may be maintained on such bond in the name of the obligee, for the benefit of a subsequent purchaser, when the purchase was made in view of the condition of the bond.

In such action, such damages may be recovered as the purchaser has sustained in consequence of the breach being such as may be presumed to have been within the contemplation of the parties when the bond was made.

DEBT, on a bond from the defendant to the plaintiff. The condition is, "that whereas I have sold to said Webster my team and teaming property and have agreed in consideration of the sum paid by him therefor to wit the sum of eleven hundred dollars that I will entirely relinquish to him the teaming business in the vicinity of Marlborough aforesaid meaning over and on the whole route heretofore occupied and run by me Now if I the said Buss shall well and truly so relinquish to said Webster said route and in no way directly or indirectly interfere with or cause the same to be interfered with then this obligation shall be void"

Facts found by a referee. The action is brought by one Elwell, assignee of the plaintiff's interest. Webster ran the route one year, and sold to Jewett, who sold to Elwell. While Webster and Jewett owned the property and did teaming over the route, Buss did not violate the conditions of the bond; but since Elwell purchased, Buss has put on teams and done teaming, contrary to the condition of the bond.

Webster paid the defendant $1,100 at the time the bond was executed and delivered. Subject to the defendant's exception, the plaintiff was allowed to show, that, September 1, 1874, he sold the property to Jewett and gave him a bond conditioned as follows:— "Whereas said Jewett has this day purchased of said Webster three horses, one freight wagon, one freight sled and other property thereto belonging, for the purpose of teaming; now if the said Webster shall hereafter desist from all business of teaming, from said Marlborough to Keene, or any where whereby the business of said Jewett can or may be affected thereby then this obligation shall be void." Jewett carried on the business until November, 1878, when he sold the property and business to Elwell. When Webster sold to Jewett, he informed Jewett that the defendant gave him a bond not to go into the teaming business over that route, and that if the defendant interfered by engaging in teaming, he, Webster, would prosecute him therefor, or let Jewett have the bond; and when Jewett sold to Elwell, he told him that he had taken the bond from Webster before described, and that Webster had taken the bond from the defendant, and that the defendant had no right to do teaming over the route described, because of the bond. The defendant had no knowledge of the representations made by Webster to Jewett and by Jewett to Elwell.

*C. B. Eddy* (of Vermont) and *C. F. Webster*, for the plaintiff. For a valuable consideration, the defendant agreed "to entirely relinquish" to the plaintiff the teaming business in the vicinity of Marlborough, over and on the whole route theretofore occupied by the defendant; and further agreed that he would "in no way directly or indirectly interfere therewith or cause the same to be interfered with."

A reasonable construction of the language of the agreement, as

set forth in the condition of the bond in suit, prohibits the defendant from retaking the teaming business and route, or any portion of it, by running a team thereon and doing freighting. The parol evidence shows that the route theretofore occupied and run by the defendant is between the towns of Marlborough and Keene, and in places in the vicinity of Marlborough. The agreement is limited as to place, but unlimited as to time. It is not invalid because unlimited as to time. The law recognizes and will enforce such an agreement. Benj. Sa., s. 521, n. *a*, and s. 525; *Pierce* v. *Fuller*, 8 Mass. 223; *Pierce* v. *Woodward*, 6 Pick. 206; *Butler* v. *Burleson*, 16 Vt. 176; *Blanchard* v. *Weeks*, 34 Vt. 589.

That the plaintiff sold the same teaming property, business, and route to Jewett, and had bound himself by his agreement and bond to Jewett not to do teaming or freighting business on that route without limit as to time, does not nullify the defendant's agreement, and does not release him from the fulfilment of the condition of his bond.

In *Elves* v. *Crofts*, the court held that "a covenant by which a butcher, on assigning the residue of a term and also his good-will in trade to another butcher, covenanted not to carry on the trade of a butcher within five miles of the premises assigned, is good in law, and it continues binding after the expiration of the term and during the life of the covenantee, although he may have ceased to carry on the trade." 10 C. B. 241; 14 Jurist 855; 19 L. J., C. P. 385.

In *Pemberton* v. *Vaughan*, the court said "an agreement to give up a house and good-will of business, and not to open a shop in the same line of business within one mile of the house, under a forfeiture, is not illegal on the ground that the restraint of trade is unlimited in point of time, and may continue, though the purchaser ceases to carry on the business." 10 Q. B. 87; 11 Jur. 411; 16 L. J., Q. B. 161.

The defendant's agreement with the plaintiff is not a mere personal one. It attached and became an essential and valuable part of the contract by which the defendant sold the property purchased by the plaintiff. It is a right that is assignable, like any other right or interest in connection with the business and property to which it pertained. The following cases sustain the assignability of such agreements: *Navigation Co.* v. *Wright*, 6 Cal. 258—*S. C.*, 8 Cal. 585; *Guerand* v. *Dandelet*, 32 Md. 562, 569; *Pemberton* v. *Vaughan*, 10 Q. B. 87.

The plaintiff, at the time of his sale and contract with Jewett, made use of his contract with and bond from the defendant as a means to effect the sale, and as the parol evidence shows, placed himself under legal and moral obligation to enforce the fulfilment of the conditions of the bond for the protection and benefit of Jewett. Jewett sold all the rights he obtained from the plaintiff to Elwell. Elwell was informed, at the time he made the purchase

and agreement with Jewett, that the plaintiff had this bond of the
defendant, and of its conditions, and he understood he took the
business and route free from the competition of the defendant.
The agreement of the defendant and his bond being still binding
on him, the plaintiff has the right to enforce it for the benefit of
Elwell, if he choose so to do.

The evidence shows that the plaintiff did not, at the time of the
sale to Jewett or at any other time, abandon his right to have the
defendant fulfil the bond. It negatives the idea of a waiver or
release. It is admissible to show the plaintiff's intention in this
respect. It does not contradict or enlarge the terms of the bond
and agreement referred to in the case. What is shown by the
parol evidence is without the scope and purpose of the plaintiff's
bond to Jewett, and of Jewett's sealed agreement with Elwell,
referred to.

The case shows a breach of the conditions of the bond in suit, by
the defendant, before suit was commenced, and while Elwell owned
and operated the teaming business over that route. The defendant
has failed " to entirely relinquish to the plaintiff the teaming
business over that route," and " has directly interfered therewith,"
and this breach entitles the plaintiff to maintain this suit.

*Batchelder & Faulkner*, for the defendant. The evidence ob-
jected to is not admissible. It is, in substance, that Buss when he
sold to Jewett, and Jewett when he sold to Elwell, each gave a
bond that they would not engage in freighting over the route; and
each, when he sold, informed the man to whom he was selling that
Buss had given a bond to Webster not to engage in freighting
over that route. To all these transactions Buss was an entire
stranger, and had no knowledge even that such transactions or rep-
resentations were made or took place. Nor were these subsequent
agreements in pursuance of the agreement between Webster and
Buss, or authorized directly or by inference thereby. They cannot
vary or contradict that contract, which is in writing under seal;
nor can Buss be in any way affected by such agreements and
declarations.

The plaintiff, having declared specially upon this bond, must
recover, if at all, upon the bond itself, construed strictly by its
terms. The language is plain, and the intention evident. The
words " heirs " and " assigns " are so universally used in bonds,
that their absence at once raises a presumption of law that the
omission is intentional. In the case of an obligor or grantor, the
omission of the word " assigns " has been held to make the writing
only binding upon the obligor or grantor and his heirs or adminis-
trators, and there certainly can be no contrary presumption in the
case of an obligee. The other phrases in the bond prove that this
presumption is the fact. The obligor binds himself in a sum to
be paid " said Webster," and no one else. In the condition, he

recites that he has agreed to relinquish "to him" the teaming business. The obligation is silent as to any time for which it was to continue in force, and silent as to any party other than Webster. This, and the evident intentional omission of any other words which could make it assignable, prove conclusively that the contract is and was intended to be by the parties a personal obligation, given and accepted for the personal protection of Webster alone so long as he personally engaged in the teaming business over that route, and no longer. To give the contract any other construction would be to vary and contradict its terms, and give it a meaning never intended by the parties. *Hillman* v. *Shannahan*, 4 Or. 163.

Had Buss agreed to refrain from the business for a definite number of years, and received a consideration therefor, the case might be different; and the cases cited by the plaintiff, which are within our reach, viz., *Navigation Co.* v. *Wright*, 6 Cal. 258, and *Hedge* v. *Lowe*, 47 Iowa 137, might be in point. An examination of those cases will show that those agreements were for a definite time.

Webster has no right of action for the penalty of this bond, for it was not until after he had parted with the property and it had passed into a fourth party's hands that there was any act which would have been a violation of its condition had Webster then been interested in the route. *Bassett* v. *Percival*, 5 Allen 345. Nor upon the evidence to which we object is he shown to have been damaged; for he agreed that he, and not Buss, would not interfere with the business. Elwell, the party in interest, can have no claim upon Buss except such as Webster had at the time of assignment, and could give him thereby. The benefit of the bond cannot be extended to Elwell, between whom and Buss there is no privity of contract. *Hillman* v. *Shannahan*, *supra*.

The construction which the plaintiff seeks to have given to this bond would make it a contract either attached to and running with the route or to the personal property forever, into whose hands soever it might pass. Certain contracts made by parties standing in certain relations to each other relating to real estate have been held to run with the real estate; but these parties had no such interest in the public highway as to bring them within that rule. This principle has never been and cannot be applied to personal property. *Hillman* v. *Shannahan*, *supra*.

STANLEY, J. The defendant, in consideration of $1,100 paid to him by the plaintiff, sold to the plaintiff his teaming property, and agreed to entirely relinquish to the plaintiff his teaming business in the vicinity of Marlborough over the route theretofore occupied by him, and in no way, directly or indirectly, to interfere therewith or cause it to be interfered with. The agreement was limited as to place, but unlimited as to time. It was made upon

an adequate consideration, and was valid.    This doctrine is established both in England and in this country.    *Davis* v. *Mason*, 5 T. R. 118; *Bunn* v. *Guy*, 4 East 190; *Proctor* v. *Sargent*, 2 Man. & G. 20; *Mallan* v. *May*, 11 M. & W. 652; *Watson* v. *Whitley*, 2 Ex. 611; *Broad* v. *Jollyfe*, Cro. Jac. 596; *Green* v. *Price*, 13 M. & W. 695; *Hitchcock* v. *Coker*, 1 N. & P. 796; *Price* v. *Green*, 16 M. & W. 346; *Chappel* v. *Brockway*, 21 Wend. 157; *Ross* v. *Sadgbeer*, 21 Wend. 166; *Pierce* v. *Fuller*, 8 Mass. 223; *Perkins* v. *Lyman*, 9 Mass. 522; *Palmer* v. *Stebbins*, 3 Pick. 188; *Davis* v. *Barney*, 2 Gill & Johns. 382; *Guerand* v. *Dandelet*, 32 Md. 562; *Pierce* v. *Woodward*, 6 Pick. 206; *Butler* v. *Burleson*, 16 Vt. 176; *Blanchard* v. *Weeks*, 34 Vt. 589; *Hedge* v. *Lowe*, 47 Iowa 137; *Navigation Co.* v. *Wright*, 6 Cal. 258—*S. C.*, 8 Cal. 585; *Elves* v. *Crofts*, 10 C. B. 241; *Pemberton* v. *Vaughan*, 10 Q. B. 87; Benj. Sa. 520 and notes, and notes to *Palmer* v. *Stebbins*, 3 Pick. 188, 193; *Eastern Express Co.* v. *Meserve*, 60 N. H. 198.

The defendant contends, that Webster having sold the property and now having no interest in the business, and there having been no breach of the agreement while he owned the business and carried it on, there can be no recovery.    But the defendant agreed that he would in no way, directly or indirectly, interfere with the business or cause it to be interfered with.    He has directly interfered with it, and there is a breach of the bond and a cause of action.    But the defendant says that this action cannot be maintained for the benefit of Elwell; that the bond was given for the personal protection of the plaintiff so long as he carried on the business; and that the fact that it runs to him alone, and not to his heirs and assigns, is conclusive on this point.    In *Pemberton* v. *Vaughan, supra, Denman*, C. J., says,—"There is no case which decides that an agreement in restraint of trade is illegal, because it is for life.    It does not follow that the plaintiff will not require the protection of the agreement because he may not himself continue in the business.    He may sell it on better terms on account of the protection secured to it by such an agreement."

In *Elves* v. *Crofts, supra*, the defendant covenanted that he would not carry on the trade of a butcher within five miles of the premises described in a lease assigned by him to the plaintiff. The defendant pleaded that the plaintiff had discontinued the business before the alleged breaches, also that his term had ceased; and he contended that there was no implied condition in a covenant of this sort that it shall cease to bind the covenantor when no longer useful to the covenantee.    *Wilde*, C. J., delivering the judgment of the court, said "a restriction necessarily limited as to space, but enduring for the life of the party restrained, is valid, as the only effectual mode of securing to the covenantee the full benefit of the good-will of his trade.    It is no longer, therefore, open to argument, that a restriction as large in its terms as is contained in the covenant in question, is invalid.    It is sug-

gested, that as this decision is based on the assumption that such a restriction is necessary for the entire protection of the covenantee, it must be construed as ceasing to operate where the covenantee has ceased, by himself or his assigns, to carry on the business assigned. This reasoning is fallacious. If the covenant is binding to its full extent when made, its signification cannot be varied by any subsequent occurrence: and to hold otherwise would be to render its import uncertain, and to impair its efficiency for that protection which the law contemplates as just. Cases may be conceived in which, notwithstanding that the covenantee had ceased to carry on the trade or business either by himself or his assigns, the good-will might not be at once extinguished; and, if considerations of time or degree be permitted to affect the right to enforce such a covenant, its value would be diminished, and the salable quality of good-will, which according to all the recent authorities is deserving of protection, would be affected."

The plaintiff's purchase was not confined to the articles of tangible property. It included the good-will of the business; and this was susceptible of valuation, and capable of transfer with the rest of the property to whomsoever the plaintiff might choose. Sto. Part., *s.* 99; Par. Part. 262.

In *Hitchcock* v. *Coker*, 1 N. & P. 814, *Tindal*, C. J., said,—"The good-will of a trade is a subject of value and price. It may be sold, bequeathed, or become assets in the hands of the personal representatives of a trader. And if the restriction as to time is to be held to be illegal if extended beyond the period of the party by himself carrying on the trade, the value of such good-will, considered in those various points of view, is altogether destroyed." There is no reason, therefore, for holding the restriction to extend only to the time that the vendees continued their joint interest.

But it is claimed that the defendant's agreement was personal; that it only applied to the plaintiff; and when his interest in the property and business ceased, the defendant's liability on the bond was at an end. The agreement to relinquish the business formed a material part of the purchase : it constituted, in part, an inducement to the purchase, and enhanced the value of the property purchased. There is no reason why the plaintiff should not avail himself of the agreement in effecting a sale. It is of no consequence whether the agreement could be transferred without the property. That question does not arise here. There seems no doubt, upon the authorities, that it could be transferred with and as an incident of the property, and these authorities are supported by reason, the nature of the property, and the business. *Guerand* v. *Dandelet*, 32 Md. 562; *Navigation Co.* v. *Wright, supra; Pemberton* v. *Vaughan*, 10 Q. B. 87; *Watson* v. *Whitney, supra.* In the last case, it was held that a suit might be brought by the executors of the obligee for a breach arising after his death.

The only case cited sustaining the defendant's position is *Hill-*

*man* v. *Shannahan*, 4 Or. 163.   In that case the court do not allude to the English cases on this subject, nor indeed to any of the American cases, except *Navigation Co.* v. *Wright*, and they draw a distinction between the two, based on the fact that in one case the word heirs is used while in the other it is not, and the court make a difference in the principle governing them.   The reasoning of the court in *Hillman* v. *Shannahan* is not sufficient to overbalance the authorities which maintain the opposite view.

The evidence objected to was competent as tending to show that Elwell had an interest in the subject-matter of the suit.   The suit being for his benefit, this was material.   If he had no interest, he was not entitled to damages.   It was also competent as showing what the plaintiff sold and what Elwell bought.

The action can be maintained, and the plaintiff may recover for the use of Elwell such damages as Elwell has sustained by the breach of the bond by the defendant, and such as may be presumed to have been in the contemplation of the parties when the bond was made.   *Noyes* v. *Blodgett*, 58 N. H. 502, and authorities.

*Case discharged.*

ALLEN, J., did not sit: the others concurred.