Hillsborough, }
    Dec., 1894. }

## SADDLERY HARDWARE MANUFACTURING CO. *v.* HILLSBOROUGH MILLS.

An agreement by a vendor not to sell like goods to other parties in a certain locality, with no limitation as to time, continues in force until the vendee has had a reasonable opportunity to dispose of the goods so purchased, in the usual course of trade.

In an action for breach of such contract, the vendee cannot recover damages for loss of profits on goods purchased subsequent to the contract, and not included therein.

ASSUMPSIT, for breach of contract. Verdict for the plaintiffs. March 5, 1892, the defendants agreed in writing to sell and ship to the plaintiffs, freight prepaid, 622 blankets of different styles, at prices specified, and " not to sell plaid blankets to any one else in New York city." Both parties complied with the contract in all respects, except that the defendants sold plaid blankets to parties other than the plaintiffs soon after March 5, 1892.

The plaintiffs offered to show by oral testimony that, prior to March 5, 1892, the plaintiffs' agent stated to the defendants' treasurer that, if the plaintiffs had the exclusive sale, they would probably be able to sell 3,000 blankets ; also, that on September 7, 1892, the plaintiffs, in consequence of orders taken by them after March 5, 1892, purchased of the defendants 275 additional blankets, the order having been contemplated by both parties when the contract of March 5, 1892, was made, and given before the plaintiffs were aware of any breach of that contract, and that the plaintiffs suffered a loss of profits in the sale of these blankets, because of the defendants' breach of the contract in suit. The testimony was excluded, and the plaintiffs excepted.

Subject to the plaintiffs' exception, the jury were instructed as follows: " The defendants' agreement not to sell plaid blankets in New York city continued only so long as would afford the plaintiffs a reasonable opportunity to sell their 622 blankets in the usual course of trade. It terminated whenever the 622 blankets were sold, even if they were sold immediately after March 5 ; and it terminated at the expiration of a reasonable length of time after that date, whether the blankets had then been sold or not,— that is, such a length of time as would afford the plaintiffs a reasonable opportunity to dispose of the blankets in the usual course of trade with the exercise of reasonable diligence and skill. What was such reasonable length of time is a question for your determination. The defendants are not liable

in this action for any loss the plaintiffs may have suffered in the sale of blankets purchased by them of the defendants after March 5, 1892."

The plaintiffs moved to set aside the verdict as to damages so far as to allow them to show the loss suffered on blankets purchased after March 5, 1892, and before they were aware of any breach of the contract in suit; and loss of profits on other blankets, the purchase of which was contemplated by the parties while the contract of March 5, 1892, was in force, but was not consummated because of the defendants' breach of contract.

*George B. French*, for the plaintiffs.

*William W. Bailey*, for the defendants.

SMITH, J.   The exceptions relate to the question of damages, and the damages depend upon the construction of the contract.

There is no provision in the contract that the plaintiffs will buy or the defendants sell more blankets at the same or other prices.   Whatever either party may have had in contemplation as to further purchases or sales, they came to no agreement or understanding in relation to the matter, and neither could compel the other respectively to buy or sell, nor recover damages for his refusal.   The fact that two of the blankets were designated as " sample " indicates that the parties had in mind that the plaintiffs might purchase more blankets of those styles.   But the entire absence of any stipulation to that effect is conclusive that neither party understood there was a contract for such further purchase or sale.

The agreement not to sell to others is without limitation as to time.   There are cases of contracts in restraint of trade where it has been held that the contract terminated only with the life of the vendor.   In *Webster* v. *Buss*, 61 N. H. 40, Buss sold his teaming business over a particular route to Webster, and agreed not to interfere with the business.   If Webster or his assigns should carry on the business of which he had purchased the exclusive right of Buss so long as the latter might live, it is manifest that a reasonable construction of the agreement required that Buss should abstain from interference so long as the business was carried on.

It must be assumed that the plaintiffs paid a larger price than they otherwise would, because of the defendants' agreement not to sell to others in the city where they were engaged in selling blankets.   The less competition, the greater ordinarily would be their profits.   Contracts in restraint of trade are not favored in the law, and are not to be extended by construction beyond the fair and natural import of the language used.   *Smith* v. *Gibbs*, 44 N. H. 335 ; *Bowers* v. *Whittle*, 63 N. H. 147.   As the contract

not to sell contains no limit as to time, the reasonable construction is, that the parties intended it to continue so long as necessary to protect the plaintiffs from competition in the sale of the goods purchased.   If the contract had been not to sell to others in New York so long as the plaintiffs would buy blankets of the defendants, the case would be altogether different from the present.   Here was not only no agreement to purchase more blankets, but an entire omission of the quantity and prices of future purchases.   The improbability is so great that the defendants would have bound themselves for an indefinite period not to make sales to others in New York, without an agreement from the plaintiffs for the purchase of some definite quantity of goods at a fixed price, that an agreement in restraint for an indefinite period cannot be read into the contract within the reasonable rules of construction.

It cannot be supposed the parties intended the restraint to last after the necessity for it ceased to exist.   Such a construction would be unreasonable.   The object of the parties was the prevention of competition.   This case, in principle, does not differ from the cases generally in restraint of trade.   In *Webster* v. *Buss,* *supra,* the purchaser could not enjoy the full fruits of his purchase unless the vendor refrained from interference so long as he carried on the business.   So here, the object of the parties — the prevention of competition — required the defendants to refrain from sales to other New York dealers until the plaintiffs could sell, in the ordinary course of business, the blankets which they bought on the faith of the defendants' contract.   The true rule was given in the instructions to the jury, to wit: The stipulation not to sell to others in New York continued for such length of time as would afford the plaintiffs a reasonable opportunity for disposing of the blankets in the usual course of trade with the exercise of due diligence and skill.

The evidence offered by the plaintiffs and excluded, related to a conversation prior to the negotiation which terminated in the written contract, in which all prior negotiations were merged, and therefore was properly rejected.   An additional objection to it is, that there was no agreement for a sale of 3,000 blankets, but a statement merely by the plaintiffs' agent that, if they could have the exclusive sale in New York city, they could probably sell that number of blankets.   No time within which they could have sold that quantity, and no price which they would have been willing to pay, seems to have been mentioned.

Evidence of the purchase of 275 blankets in September, 1892, was immaterial.   They were not included in the written contract.

The motion to set aside the verdict must be denied, and the

*Exceptions overruled.*

Chase, J., did not sit: the others concurred.