## CURTISS CANDY CO. v. SILBERMAN et al.
### No. 5425.

Circuit Court of Appeals, Sixth Circuit.
Dec. 11, 1930.

John A. Chambliss, of Chattanooga, Tenn. (Irwin N. Walker and Samuel F. White, Jr., both of Chicago, Ill., and Sizer, Chambliss & Sizer, of Chattanooga, Tenn., on the brief), for appellant.

C. W. K. Meacham, of Chattanooga, Tenn. (Cantrell, Meacham & Moon, of Chattanooga, Tenn., on the brief), for appellees.

Before MOORMAN, MACK, and HICKENLOOPER, Circuit Judges.

HICKENLOOPER, Circuit Judge.

The plaintiffs below, here appellees, brought their action originally in the chancery court of Hamilton county, Tenn., seeking discovery, accounting, and damages for breach of an alleged contract of exclusive

representation of the defendant, in said county, in the sale of its candy products, the best known being a candy bar sold under the name of "Baby Ruth." The cause was removed to the District Court on the ground of diversity of citizenship and was there tried as an action in equity. While the remedy was properly at law, by a suit for breach of contract, no reason appearing why adequate relief could not have been secured in such action, the defendant did not raise this issue, and we are content to treat the action as one in equity and the case as if now rightly before this court as an equity appeal. Twist v. Prairie Oil Co., 274 U. S. 684, 692, 47 S. Ct. 755, 71 L. Ed. 1297. Plaintiffs secured a decree from which defendant appeals.

■■ Plaintiffs were jobbers in the city of Chattanooga, Hamilton county, Tenn. Being solicited to become distributors for defendant, they responded that they would agree to so act only if given exclusive rights in and for that county. The salesman promised exclusive distribution privileges, and an order to the value of approximately $500 was placed forthwith, across the face of which was written "Exclusive for Hamilton County." Not content with the assurance thus given, plaintiffs sought, and two weeks later secured, home office confirmation of the arrangements made with the salesman, "for the exclusive distribution of the Curtiss line in Hamilton County." Standing orders were placed, and from time to time modified, and shipments were periodically made thereunder; but neither orally, nor by the original or standing orders, nor through correspondence, did the parties enter into a definite agreement binding the defendant to furnish in the future, or the plaintiffs to buy, any specific quantity, or to maintain the relationship for any given period of time, or fixing prices, terms, etc. Recovery was based solely upon a breach of the alleged contract for exclusive representation. Considered as one of the covenants in, and as an integral part of, the broader contract for the marketing of defendant's products, the grant of exclusive territory must fail with the unenforceability of such marketing contract. Matters of quantity, type of merchandise, price, and other terms being left undetermined, the negotiations of the parties can at best be considered as resulting in a series of separate and independent sales, each complete in itself, and each consisting of its individual order, accepted and the sale completed on the part of defendant by delivery of the merchandise. There was undoubtedly a mutual expectation of an indefinite continuance of this relationship, but the contract lacked that mutuality necessary to make it enforceable in so far as executory obligation was concerned. Willard Co. v. U. S., 262 U. S. 489, 493, 43 S. Ct. 592, 67 L. Ed. 1086; Wakem & McLaughlin v. Culver, 28 F.(2d) 942 (C. C. A. 6); Am. Merch. Marine Ins. Co. v. Letton, 9 F.(2d) 799 (C. C. A. 2); International Shoe Co. v. Herndon, 135 S. C. 138, 133 S. E. 202, 45 A. L. R. 1192.

■ Doubtless the parties were competent to agree upon what in effect would be a permanent sale of territory, in the form of an irrevocable option to exercise exclusive privileges, irrevocable because supported by sufficient consideration. Plaintiffs' strongest position is that the agreement for exclusive representation was in this case such a separate collateral and independent unilateral contract, the consideration being the initial and subsequent orders, the use of plaintiffs' selling organization, the advertising incident thereto, and the establishment of a lucrative demand for defendant's products in the territory specified. The contention thus is that there had been, in substance, an offer by the defendant that, if plaintiffs would undertake and initiate the distribution of the Curtiss line, the defendant would sell to no other jobber within the designated territory as long as plaintiffs cared to buy, and that this offer was accepted by performance by plaintiffs for more than a year. Whether the parties in fact entered into a unilateral contract of this sort is a question of fact to be determined in accordance with the intention of the parties as shown by the evidence. Nor do we see a legal distinction between the grant of exclusive territory as one of the covenants of an indivisible marketing agreement, unenforceable for want of mutuality, and an even valid unilateral contract for such exclusive representation if the latter is intended to be limited to the period of operation of the marketing agreement which it supplements. Such marketing agreement being terminable at will, notice of an intent to revoke the exclusive feature must operate as an abrogation of the entire relationship and as a proposal to continue upon the new basis of an open market.

■ The evidence discloses no express manifestation of intent upon the subject of time. It is true that at the initial interview with defendant's salesman the plaintiffs inquired whether the promise of exclusive territory was to be considered as a temporary or a permanent arrangement, and were assured that it was intended to be permanent. But when

the oral agreement was reduced to written form, by securing home office confirmation, nothing was said upon this subject. The alleged grant is not in writing as it should have been, under the statute of frauds (Shannon's Code Tenn. § 3142, subsec. 5), to establish a continuing obligation necessarily extending beyond the year. The parties distinctly omitted to give the transaction the form of a "sale" of territory, and it is so improbable that the defendant would have bound itself for an indefinite period, without the assumption of any obligation upon the part of plaintiffs as to future purchases, that we are constrained to ascribe the promise of defendant's salesman to a continuance of the entire relationship rather than as indicating any intent to dispose of trade rights presently and permanently.

■ On the other hand, the normal inference is that the parties intended the restrictive promise of defendant, to sell to no others in Hamilton county, to be operative only for that period during which plaintiffs continued to represent defendant; in other words, that the grant of exclusive territory was dependent upon and related to the performance of the marketing agreement and was coextensive in term with it—that it was, as was the marketing agreement, revocable or terminable at will. This seems also to have been the understanding of the parties when, under date of April 28, 1924, the defendant wrote to again assure plaintiffs "that you have exclusive on our line in Chattanooga," and for the first time then suggested a possible period of duration of such representation by adding: "At least, up to the time that we find you cannot give us distribution. ʺ * * We certainly would not want at any time in the future to sell any other jobber at Chattanooga if you will give us the distribution to which the quality of our goods entitles us." This construction was apparently accepted by plaintiffs at the time, although we find them later denying all right in defendant to cancel.

■ It having come to the notice of plaintiffs early in November, 1924, that several sales had been made to other jobbers in Chattanooga, the plaintiffs vigorously protested to the defendant, insisting upon the exclusive feature of their contract and notifying defendant of their intention to hold it for profits so lost. In reply to this protest the defendant wrote on November 26, 1924, that no one jobber could give them the distribution to which they thought they were entitled, that they must take orders from any one who produced them, and that they could not give an exclu-

sive contract to any one. To this the plaintiffs simply reiterated that they nevertheless expected the exclusive representation and "our profit on every box shipped to competitors as long as this contract lasts." The relationship of the parties continued until about June 1, 1926, when the defendant discontinued all shipments. We are of the opinion that by its letter of November 26, 1924, the defendant abrogated whatever contract for exclusive representation it might then have had with the plaintiffs. Thenceforward the dealings of the parties were on an entirely different and new basis. The series of separate contracts of purchase and sale continued for almost two years, but the provision for exclusive representation had been terminated in a manner in which we think defendant had the power and right to terminate it.

■ We do not overlook the fact that an offer of a unilateral contract which the offeror should reasonably expect to induce action of a definite and substantial character, and which does induce such action, has been considered in some cases as irrevocable, even without full performance by plaintiff, if injustice can be avoided only in that manner. Cf. Bassick Mfg. Co. v. Riley et al., 9 F.(2d) 138 (D. C. Pa.); American Law Institute, Restatement of the Law of Contracts, § 90. But we do not consider this such a case. This growing doctrine of the law is founded upon the injustice and hardship arising from the justifiable reliance of the promisee upon the promise, should such promise be held unenforceable for want of consideration. Here the evidence discloses no such hardship upon or unfairness toward the plaintiffs, nor unremunerated services, nor expenditures by them of such substantial character as would justify the application of the principle referred to.

The conclusions here reached are consistent with the only closely analogous decisions called to our attention. In Saddlery Hdw. Mfg. Co. v. Hillsborough Mills, 68 N. H. 216, 44 A. 300, 73 Am. St. Rep. 569, followed in Carlson v. Stone-Ordean-Wells Co., 40 Mont. 434, 107 P. 419, the operation of a promise of exclusive representation was limited, in a well-reasoned opinion, to such time as would allow reasonable opportunity to dispose of the goods so purchased. This meets all practical needs of justice in the present case and commends itself to our judgment.

Coming to apply the principles above announced to the evidence in the present case, we find proof of several sales to others prior to defendant's letter of November 26, 1924,

454

but no substantial evidence of damages thereby occasioned. It does not appear that plaintiffs could have made the sales either to the other jobbers, or to the retailers to whom they sold, had the defendant not violated its agreement before revocation. Conceding such agreement to have been valid and binding before revocation, as a unilateral contract intended to operate only during performance of the marketing agreement, or, under Saddlery Hdw. Mfg. Co. v. Hillsborough Mills, supra, until plaintiffs had had a reasonable opportunity to dispose of the goods on hand, there is still no evidence of loss of sales nor, indeed, of more than nominal damages.

The decree of the court below is reversed, and the cause is remanded, with instructions to enter a new decree awarding plaintiffs only such nominal damages as will carry costs in that court. The appellant is awarded costs here.