BRAZELL, RESPONDENT, v. COHN ET AL., DEFENDANTS; COHN, APPELLANT.

(No. 2,109.)

(Submitted May 6, 1905. Decided July 3, 1905.)

*Sales — Contracts — Breach — Complaint — Costs — Security — Application — Instructions — Damages — Reduction — Harmless Error.*

Costs—Security—Application—Notice.
1. *Held* that, where defendant did not apply for an order requiring plaintiff, a nonresident of the State, to give security for costs until the day on which the cause was set for trial, and where no previous notice of such demand had been given, the district court was justified in denying a stay until the cost bond was given, on the ground that the application was made too late.

Breach of Contract—Complaint.
2. Where, in an action for breach of contract to purchase certain milk, the complaint alleged that plaintiff was then and there able, ready and willing, and offered to perform all the terms and conditions of the contract to be performed by him during the term of the contract and was and would be during the entire continuance of the contract able, ready and willing to perform the same and had offered so to do, etc., it was not objectionable for failure to allege in terms that plaintiff had "fully complied with all the terms and conditions of the contract by him to be kept and performed."

Contracts—Instructions.
3. In an action for breach of contract, a requested instruction that the jury, in fixing damages for nonperformance in the future, should make allowance for the uncertainties which affect all conclusions depending on future events, and that only such evidence as was reasonably certain to extend to future events should be considered in fixing damages for nonperformance of the contract, was vague and indefinite, and not authorized by Civil Code, section 4301, providing that no damages can be recovered for breach of contract which are not clearly ascertainable in both their nature and origin.

Contracts—Breach—Evidence—Prejudice.
4. Where, in an action for breach of contract to purchase certain milk the court sustained an objection to a question asked of one of defendants' employees whether there was any effort on defendant's part, or anyone acting under him, to break the contract, the fact that before a ruling on the question was finally made the witness stated that he did not want to answer the question unless he had to, that he was in the confidence of the defendants, and did not want to be placed in the position of telling what happened and what did not happen, the question thus remaining unanswered, was not reversible error.

Sales—Breach of Contract—Damages.

5. In an action for breach of a contract to purchase all of the milk of plaintiff and his assignor for a period of five years from November, 1899, defendants having repudiated the contract, plaintiff was entitled to recover the difference between the market and the contract price of milk he would have produced during the contract period, regardless of the fact that after defendant's breach of contract plaintiff disposed of his milk business, and was therefore unable thereafter to perform the contract on his part.

Sales—Breach of Contract—Same—Reduction of Damages.

6. Where defendants broke a contract to purchase all of plaintiff's milk at wholesale for a specified price per gallon for five years, plaintiff was not thereafter required to change the character of his business, and sell his milk at retail, in order to reduce his damages.

Appeal—Verdict—Harmless Error.

7. Where the evidence would have supported a verdict for a greater amount than that returned in favor of plaintiff, defendants were not entitled to object that the exact amount awarded was not justified by the evidence.

*Appeal from District Court, Silver Bow County; E. W. Harney, Judge.*

ACTION by Thomas F. Brazell against Louis S. Cohn and others. From a judgment in favor of plaintiff, and from an order denying a motion for a new trial, defendant Cohn appeals. Affirmed.

*Messrs. Kirk & Clinton,* for Appellant.

The court erred in overruling the objection that the complaint did not state facts sufficient to constitute a cause of action, in that the assignee of the contract never duly or at all performed the obligations in the said contract on him binding. The plaintiff may allege and prove a contract and that he either performed or offered to perform his part to be performed. No such allegation appearing in the complaint, the complaint does not state a cause of action. (4 Ency. of Pl. & Pr. 639; *Barron* v. *Frink,* 30 Cal. 486; *Hill* v. *Grigsby,* 35 Cal. 662.)

The testimony of Fitzpatrick was also prejudicial to defendant. (*Harrison* v. *Sutter Street Ry.,* 116 Cal. 156, 47 Pac. 1019; 14 Ency. of Pl. & Pr., pp. 760, 761, and notes; *McDonald* v. *Walters,* 40 N. Y. 551.)

No remote or speculative damages can be allowed. (*White v. Miller,* 71 N. Y. 118-133, 27 Am. Rep. 13; *Miller v. Mariners' Church,* 7 Me. 51, 20 Am. Dec. 341.) No vindictive damages can be allowed. (*Hoy v. Gronoble,* 34 Pa. St. 9, 75 Am. Dec. 628.) Plaintiff was bound to keep his damages down to the lowest amount possible. (*Miller v. Mariners' Church,* 7 Me. 51, 20 Am. Dec. 341; *Davis v. Fish,* 1 G. Greene, 46, 48 Am. Dec. 387; *Gazette etc. Co. v. Morss,* 60 Ind. 158; *Hamilton v. McPherson,* 28 N. Y. 72, 84 Am. Dec. 330.) Plaintiff must prove actual damages. These consist of the difference between the market price of his product and the price the defendant agreed to pay. The facts were capable of proof, and the plaintiff was bound to furnish such proof or fail in his action. (*Masterton v. City of Brooklyn,* 7 Hill (N. Y.), 61, 42 Am. Dec. 38; *United States v. Behan,* 110 U. S. 338, 28 L. Ed. 168, 4 Sup. Ct. 81; *Howard v. Stillwell et al.,* 139 U. S. 199, 35 L. Ed. 147, 11 Sup. Ct. 500; *Hoy v. Gronoble,* 34 Pa. St. 9, 75 Am. Dec. 628; *Utter v. Chapman,* 38 Cal. 659; *Hill v. McKay,* 94 Cal. 15, 29 Pac. 406; 14 Ency. of Pl. & Pr., p. 761.)

*Mr. John J. McHatton,* for Respondent.

The complaint states a cause of action. (*Jacobs, Sultan Co. v. Union Mercantile Co.,* 17 Mont. 61, 64, 42 Pac. 109.) The offer of performance placed the burden on the defendants to plead, as a matter of defense, any failure on the part of the plaintiff to comply therewith previous to that time and which would justify their refusal. This they attempted to do. (See, also, Civ. Code, secs. 4270, 4272, 4300, 4367; *Hale v. Trout,* 35 Cal. 229; *McLennan v. Ohmen,* 75 Cal. 558, 17 Pac. 687; *Hicks v. Drew,* 117 Cal. 305, 49 Pac. 189, 191; Greenleaf on Evidence, sec. 268a; *Morgan v. Reynolds,* 1 Mont. 163; *Tahoe Ice Co. v. Union Ice Co.,* 109 Cal. 242, 41 Pac. 1020; *Lambert v. Haskell,* 80 Cal. 619, 22 Pac. 327; *Hawthorne v. Siegel,* 88 Cal. 158, 22 Am. St. Rep. 291, 25 Pac. 1114; *Insurance Co. v. Boon,* 95 U. S. 117,

130, 24 L. Ed. 395; *Brady* v. *Northwestern Ins. Co.,* 11 Mich. 425; *Dwyer* v. *Carroll,* 86 Cal. 298, 305, 24 Pac. 1015; *Hubble* v. *Cole,* 88 Va. 236, 29 Am. St. Rep. 718, 13 S. E. 441, 13 L. R. A. 311; *Hutchison etc. Co.* v. *Pinch,* 91 Mich. 156, 30 Am. St. Rep. 471, 51 N. W. 930; *Sanford* v. *East Riverside Irr. Dist.,* 101 Cal. 275, 35 Pac. 865; *Shoemaker* v. *Acker,* 116 Cal. 239, 48 Pac. 62; Sutherland on Damages, 2d ed., secs. 64, 72, 107, 120; *Masterton* v. *Mayor etc. of Brooklyn,* 7 Hill, 61, 42 Am. Dec. 38; *United States* v. *Behan,* 110 U. S. 338, 344, 28 L. Ed. 168, 4 Sup. Ct. Rep. 81; *Rice* v. *Whitmore,* 74 Cal. 619, 5 Am. St. Rep. 479, 16 Pac. 501; *Stoddard* v. *Treadwell,* 26 Cal. 294, 308; *Cederberg* v. *Robison,* 100 Cal. 98, 34 Pac. 625; *Bryson* v. *McCone,* 121 Cal. 153, 53 Pac. 637; 1 Sedgwick on Damages, pp. 116, 195, 196, 199.) Upon breach of a contract and a refusal to allow the innocent party to continue to fulfill his part, the latter may recover the full value of the contract, even though the time of the contract has not yet expired. (*Jewett* v. *Brooks,* 134 Mass. 505; *Hubbert* v. *Borden,* 6 Whart. (Pa.), 79.

Where an established business is wrongfully injured or destroyed, the owner of the business can recover the damages sustained thereby; and, upon this question, evidence of profits which he was actually making is admissible. (*Lambert* v. *Haskell,* 80 Cal. 619, 22 Pac. 327; *Hawthorne* v. *Siegel,* 88 Cal. 158, 22 Am. St. Rep. 291, 25 Pac. 1114; *Brady* v. *Northwestern Ins. Co.,* 11 Mich. 425; *Dwyer* v. *Carroll,* 86 Cal. 298, 24 Pac. 1015; *Tahoe Ice Co.* v. *Union Ice Co.,* 109 Cal. 242, 41 Pac. 1020; *Sanford* v. *East Riverside Irr. Dist.,* 101 Cal. 275, 35 Pac. 863; *Shoemaker* v. *Acker,* 116 Cal. 239, 48 Pac. 62; 1 Sutherland on Damages, sec. 64; *Bryson* v. *McCone,* 121 Cal. 153, 53 Pac. 637.)

MR. JUSTICE HOLLOWAY delivered the opinion of the court.

The complaint in this action alleges that in November, 1899, one Charles Collins, who was then the owner of a certain dairy ranch and dairy business in Silver Bow county, entered into a contract in writing with the defendants, Cohn and Fox, by which Collins agreed to sell all the milk then produced by his dairy to the defendants, and not to sell to anyone else. Collins then owned twenty-three cows, and the contract limited any increase in that number to ten per cent of the number then on hand, and limited the amount of milk which the defendants were obligated to purchase under the contract to an amount not exceeding an average of three gallons per cow per day. For all milk testing not less than three and three-fourths per cent butter fat the defendants were to pay twenty cents per gallon. The contract was for a period of five years. The complaint further alleges that on April 8, 1900, for a valuable consideration, this plaintiff purchased the dairy ranch and dairy business from Collins, and received an assignment of said contract; that such contract was valuable, and constituted an inducement to the plaintiff to purchase from Collins; that Collins fully kept and performed all the terms of the contract by him to be kept and performed prior to the assignment; that the assignment was fully ratified by the defendants; that the plaintiff delivered milk from the ranch produced by said cows to the defendants at the point designated in the contract, and continued such delivery under said contract until the 26th day of April, 1900, and that the milk so delivered was accepted and paid for by the defendants.

It is further alleged "that the plaintiff was then and there able, ready, and willing and offered to perform all and singular the terms and conditions of said contract to be kept and performed on his part during the period thereof, and is now, and will be during the entire continuance of said contract, able, ready, and willing to perform the same, and has offered to do so"; but, notwithstanding this, on the 26th day of April, 1900, "said defendants, without right, and against the will, wish, and consent of the plaintiff, and in violation of the

terms of said contract and of the assignment of the same to this plaintiff, and without any fault or violation of the terms of said contract on the part of plaintiff, refused to keep or perform said contract, and then and there refused to accept any milk whatever from the plaintiff under said contract, or to pay him therefor, and notified and informed said plaintiff that they would thereafter so refuse." It is further alleged that all the milk delivered under the contract was, and the milk which the plaintiff would be able to deliver under it during the entire term would be, of the quality for which, under the terms of the contract, the defendants agreed to pay twenty cents per gallon. The prayer of the complaint is for damages in the sum of $6,000.

The answer admits the due execution of the contract, and sets forth a copy of it. There is a denial that Collins had kept or performed the contract, and allegations of a breach, in that the milk delivered by him was not of the quality described in the contract, and that it was not delivered within the time limited by the contract for its delivery. It is also pleaded that the plaintiff did not make delivery of the milk within the hours of each day specified in the contract for such delivery. A further defense attempted to be pleaded is that the defendants were not given thirty days' previous notice of the assignment of the contract by Collins to plaintiff. Other defenses are pleaded, but, as they are not considered in the further proceedings of the case, no mention need be made of them.

The affirmative matters pleaded in the answer are denied by reply. The reply also pleads an estoppel against the defendants with respect to noncompliance with the terms of the contract by Collins and lack of notice of the assignment of the contract to plaintiff.

The cause was set for trial for May 3, 1904. On that day, prior to the trial, the defendants filed and served upon the plaintiff a written demand for security for costs, supported by affidavit, showing that the plaintiff was then a nonresident

of the state of Montana, and orally asked the court to stay all proceedings until such security should be given. The plaintiff thereupon volunteered or promised to give security for costs, as required by law within thirty days from that date, and upon this assurance the court overruled the motion for a stay and proceeded with the trial.

Upon the trial the defendants asked the court to give an instruction, numbered 3, as follows: "The court instructs the jury that in fixing damages for the nonperformance in the future you should make allowance for the uncertainties which affect all conclusions depending upon future events; and that only such evidence as is reasonably certain to extend to future events may be considered by you in fixing damages for nonperformance of a contract." The court refused to give this instruction. The jury returned a verdict in favor of plaintiff for $2,500, and from the judgment entered on such verdict and from the order denying defendants' motion for a new trial the defendant Cohn appealed.

The specifications of error relied on are: (1) The refusal of the court to stay proceedings until the cost bond was given; (2) the order of the court overruling defendants' objection to the introduction of any evidence on the part of the plaintiff upon the ground that the complaint does not state facts sufficient to constitute a cause of action; (3) the refusal of the court to give instruction No. 3, above; (4) the admission of certain evidence; and (5) the insufficiency of the evidence to sustain the verdict. These will be considered in the order given.

1. Section 1871 of the Code of Civil Procedure provides for security for costs in case the plaintiff is a nonresident of the state, and further provides that, when required, all proceedings in the action must be stayed until an undertaking be given. Section 1872 provides that after the lapse of thirty days from the *service of notice* that security is required, etc., the action must be dismissed, if the security be not given. These sections clearly contemplate that the right to demand security for

costs from a nonresident is merely a privilege, which the defendant may insist upon; but the demand, if made, must be made upon notice given to the plaintiff. This must be so in order that any meaning be given to the language of section 1872, above.

Section 1822 of the same Code provides that when a written notice of a motion is necessary it must be given five days before the appointed time for the hearing. The record discloses that the court denied the stay upon the ground that the application for security was made too late. It was not necessary that the record show the reasons for the court's decision. As the application for security for costs was not made until the day set for the trial, and no previous notice of such demand appears to have been given, the court was justified in denying the motion, and justified for the reason which it gave— that it came too late; that is, that it was made immediately before the trial of the cause began, and without previous notice having been given.

2. It is claimed that the complaint does not state a cause of action, for the reason that it does not contain an averment that plaintiff fully complied with all the terms and conditions of the contract by him to be kept and performed. We do not understand that this allegation *in terms* is a *sine qua non* of a sufficient complaint for a breach of a contract. It is necessary that the complaint should contain this allegation, or its equivalent, in order to put the defendant in the wrong, and we think this complaint in substance does so. It shows, by the averments above set forth, that plaintiff had in fact fully kept and performed the terms of the contract by him to be kept and performed. We are therefore of the opinion that the complaint states ·a cause of action, and that the appellant's contention in this regard is without merit.

3. While section 4301 of the Civil Code provides that no damages can be recovered for a breach of a contract which are not clearly ascertainable in both their nature and origin, we fail to see the application of this principle to the instruction

requested. The court, by other instructions, fairly covered all the issues necessary to be submitted to the jury, and, in any event, we are of the opinion that the instruction offered is so vague and indefinite in its terms that it could not have been of any service to, but might have misled, the jury.

4. A witness—Fitzpatrick—who succeeded to the interests of Brazell in the dairy ranch and business was permitted to testify that he maintained upon the ranch from forty to sixty cows, and that he could furnish about seventy-five gallons of milk per day. It is claimed that the court erred in admitting this evidence over the objection of defendants. But the evident purpose of the testimony was to show that the ranch would support at least the number of cows called for in the contract, and that the required amount of milk mentioned therein could be produced. For this purpose it was competent, and it is hardly conceivable that it could have misled the jury in any respect whatever.

In rebuttal W. L. Irvin was called as a witness for the plaintiff, and thereupon this question was asked and these proceedings had:

"Q. During the time you were there [the milk depot], you may state, if you know, if there was any effort on the part of Mr. Cohn, or anyone acting under him, to break these contracts.

"Mr. Clinton: Objected to as incompetent, irrelevant, and immaterial, for the reason that this party was not an interested party at the time. he was there, and that it was prior to the assignment of the contract from Collins to this plaintiff, and it is not competent at this time.

"The Court: He may answer this question. (Exception taken.)

"A. I don't want to answer that question unless I have to. I was there in the confidence of Mr. Cohn, and I don't want to be placed in the position of telling what happened or did not happen.

"The Court: You may answer if there was any effort to break the contract with this plaintiff. You may answer that.

"Mr. McHatton: I offer this for the purpose of showing that there was an effort on Mr. Cohn's part to break and get rid of all these contracts, and to impeach Mr. Cohn's testimony upon the stand, for he denied it.

"The Court: What about an offer to impeach on an immaterial matter? Unless he knows of an offer to break this contract with this plaintiff, or his predecessor in interest, this objection will be sustained.

"Mr. McHatton: I offer to prove by the witness on the stand—and I will state that I do not desire this offer to influence the jury at all—I offer to prove by the witness on the stand that during the month of March, 1900, Mr. Cohn, one of the defendants in this case, expressed a desire to break all of the contracts, including the contract under which the plaintiff claims, and so conduct the business with reference to the receipt of milk from the various parties that he might induce them to abandon their contract, or that he might find some excuse for refusing to take the milk; and that he conveyed this desire to the witness, and asked him to reduce the tests for the purpose of aiding what he could to make the contracts unsatisfactory to the parties delivering the milk, including Charles Collins.

"Mr. Clinton: I would like to have the court admonish the jury that they will not pay any attention to this offer.

"The Court: The jury will not take into consideration this offer.

"Mr. Clinton: And I desire to object to it on the ground that it is incompetent, irrelevant and immaterial and not rebuttal. (Objection sustained.)"

While the excuse offered by the witness for not answering the question propounded to him might imply that, if he did answer it, his answer would be prejudicial to the defendants, still a court cannot anticipate what a witness will say; and,

as a motion was not made to strike out the answer, no error can be predicated upon the order of the court as made. There is nothing in the question propounded which could have advised the court of the probable answer of the witness, and, as the witness did not in fact answer the question, and as the rulings thereafter were in favor of the defendants, there is no error of which they can complain.

5. It is said that the evidence is insufficient to support the verdict. The contract called for the sale of milk by wholesale at twenty cents per gallon if it tested not less than three and three-fourths per cent butter fat. The evidence shows that all the milk delivered by the plaintiff and his predecessor, Collins, met that requirement. The contract was only in force a short time until the alleged breach by the defendants. The record does show that after the repudiation of the contract by the defendants the plaintiff employed an additional man and team, and entered upon the business of retailing his milk in Butte; that during the first three months he lost one-half of his milk product, and the other half he was compelled to sell at a loss of four cents per gallon; that he was producing and could produce sixty gallons of milk per day; so that the damages for these three months are susceptible of exact computation, and amounted, according to plaintiff's contention, to $648 upon the milk alone. The plaintiff testifies that until November 3, 1900, when he sold out his business, he was compelled to be at an extra expense of $150 per month for the extra man and team, but that, aside from this expense, he was able to sell his milk so that he incurred no other loss after the first three months. This additional expense amounted to $937. This cause was tried on May 3, 1904, or forty-two months after the plaintiff sold his business. The evidence is that during all that period of time he could have produced sixty gallons of milk per day, but, instead of being able to sell it at wholesale at twenty cents per gallon, the market price per gallon wholesale was not to exceed sixteen cents. Upon the amount of milk which he could have produced during this

period plaintiff suffered a loss of $3,024, or a total loss of $4,609, or, if plaintiff had continued the retail business, he would have incurred the expense of the extra man and team for this remaining portion of the contract period, which would have made the damages much greater.

It is contended, however, that after the sale of his business the plaintiff could not claim any additional damages, as he was not then in a position to carry out the contract on his part. But appellant overlooks the fact that upon the repudiation of the contract by defendants the plaintiff was not under any obligation to continue in the business, but might have disposed of it at any time thereafter, and still have maintained his action for damages for the breach of the contract on the part of the defendants. And, having a contract with defendants to sell his milk at wholesale, the plaintiff was not compelled to change the character of his business, and sell at retail, in order to keep the damages down; nor was he compelled to accept a price from the defendants lower than that agreed upon, or compute his damages upon the basis of the proposed reduction. He could insist upon compliance on the part of the defendants, or upon damages based upon the difference between the contract price and the market price of milk at wholesale. In the sale of his business the presumption is that he recovered adequate compensation for it upon the basis of the market value of milk at wholesale at that time, which was sixteen cents per gallon, and he was entitled to recover thereafter the difference between the contract price and the market price in the same locality. (Civil Code, sec. 4311.)

But it is further contended that upon no basis disclosed by the evidence could the jury have arrived at the exact amount, $2,500. However, if the evidence would have supported a verdict for a greater amount than that returned by the jury, the appellant cannot complain that it did not fix the amount of damages at as great an amount as it might have done. There is some conflict in the evidence, but we think it is sufficient to sustain the verdict.

We have considered the other errors assigned, but are of the opinion that there is no merit in any of them. The judgment and order are affirmed.

*Affirmed.*

MR. CHIEF JUSTICE BRANTLY and MR. JUSTICE MILBURN concur.

Rehearing denied July 29, 1905.