CARLSON, RESPONDENT, *v.* STONE-ORDEAN-WELLS CO., APPELLANT.

(No. 2,753.)

(Submitted January 21, 1910. Decided February 4, 1910.)

[107 Pac. 419.]

*Contracts—Exclusive Right to Sell Goods—Principal and Agent —Ratification—Loss of Profits.*

Contracts—Exclusive Right to Sell Goods—Principal and Agent—Ratification—Intent—Question for Jury.

1. In an action for damages flowing from the breach of a contract giving plaintiff, a jobber, the exclusive right to sell defendant company's matches in a certain city, entered into between the former and the company's agent, without authority in the latter to do so, it was a question for the jury to say, from a letter written by the company to plaintiff, evidencing a complete ratification of the agent's act, and other evidence tending to show that for more than three years thereafter defendant company had acquiesced in, received the benefits from and carried out, the agreement according to its terms, whether defendant was in possession of all the material facts respecting the contract and intended to ratify its agent's act.

Same—Evidence—Admissibility.

2. A paper designated a "distribution list," made for and used by defendant company, showing the persons to whom it made sales, and the amounts thereof, was properly admitted as showing the extent of the breach of the alleged contract, and as some evidence to be considered by the jury in determining the damages recoverable by plaintiff, and the fact that it referred to brands of matches not manufactured by defendant at the time the contract was made was immaterial, where

there was evidence that these matches were virtually the same as those carried by plaintiff but labeled differently.

Same—Unlimited Duration of Contract—Validity.

3. The fact that the contract between plaintiff jobber and defendant manufacturing company did not limit the time of its duration was no objection to its validity; such a contract will be construed as having been intended to continue so long as necessary to protect the jobber from competition in the sale of the goods, and to give him a reasonable time within which to dispose of the goods he has on hand, before revoking the contract.

Same—Breach—Loss of Profits—When Recoverable.

4. Where the very object of, and inducement to, a contract are the profits accruing to one of the parties to it, and this fact is understood by both when entering into it, the one whose profits are cut off by the other's breach of the agreement may recover his loss of them as general damages.

Same—Loss of Profits—When Element of Damage.

5. Loss of profits may be recovered as an element of damages for the breach of a contract, provided they are certain and such as might properly be expected to follow the breach.

Same—Loss of Profits—Evidence—Sufficiency.

6. Evidence *held* sufficient to go to the jury on the question of plaintiff's damages, consisting of profits lost on account of the breach of an agreement under the terms of which he had been given the exclusive right to sell defendant company's goods in a certain city.

*Appeal from District Court, Silver Bow County; John B. Mc-Clernan, Judge.*

ACTION by Swend Carlson against the Stone-Ordean-Wells Company. From a judgment for plaintiff, and from an order denying a new trial, defendant appeals. Affirmed.

*Messrs. Binnard & Rodger* submitted a brief in behalf of Appellants. Mr. *Binnard* argued the cause orally.

An agent who has an exclusive contract for the sale of machinery in a given territory cannot recover his commissions from his principal for a sale made by another in such territory till he has shown that he himself would have made the sale or that he performed in connection therewith the requirements imposed upon him by the contract. To entitle him to more than nominal damages for the violation of the contract, the actual detriment occasioned must be shown by competent evidence and with reasonable certainty. (*Roberts* v. *Minneapolis Threshing Machine Co.*, 8 S. D. 579, 59 Am. St. Rep. 777, 67 N. W. 607; Joyce on

Damages, sec. 2059; *Golden Gate Packing Co.* v. *Farmers' Union,* 55 Cal. 606; *Dole* v. *Sherwood,* 41 Minn. 535, 16 Am. St. Rep. 731, 43 N. W. 569, 5 L. R. A. 720; *Vosbury* v. *Mallory,* 70 App. Div. 247, 75 N. Y. Supp. 480.)

At the date the alleged contract of agency was entered into, there was absolutely nothing said as to the length of time such agency should continue, which brings the case within the rule laid down in the case of the *Saddlery Hardware Mfg. Co.* v. *Hillsborough Mills,* 68 N. H. 216, 73 Am. St. Rep. 569, 44 Atl. 300, that an agreement in restraint for an indefinite period cannot be read into such a contract within the reasonable rules of construction.

Whoever seeks to procure and relies on a ratification is bound to show that it was made under such circumstances as in law to be binding on the principal, especially to see to it that all the material facts were known to him. The burden of making inquiries rests on the party who is endeavoring to obtain a benefit or advantage for himself. (Mechem on Agency, sec. 77; *Valley Bank* v. *Brown,* 9 Ariz. 311, 83 Pac. 362; *Lindow* v. *Cohn,* 5 Cal. App. 388, 90 Pac. 485.)

The proof offered in support of the allegations of the complaint tends to establish special damages. In order to authorize proof of such damages they must be alleged. (*Parker* v. *Bond,* 5 Mont. 1, 1 Pac. 209; *Mitchell* v. *Clarke,* 71 Cal. 163, 60 Am. Rep. 529, 11 Pac. 882; 1 Sutherland on Damages, 2d ed., sec. 419.)

In behalf of Respondent there was a brief and oral argument by *Mr. John A. Smith.*

Appellant ratified Draper's act and adopted the contract. (*Aultman etc. Co.* v. *Knoll,* 71 Kan. 109, 79 Pac. 1074; *Ankeny* v. *Young Bros.,* 52 Wash. 235, 100 Pac. 736; Mechem on Agency, 157.)

The following cases involved the construction of contracts similar to the one in the case at bar: *Metropolitan Bank* v. *Bene-*

*dict,* 74 Fed. 182, 20 C. C. A. 377; *Norton* v. *Melick,* 97 Iowa,
564, 66 N. W. 780; *Sturm* v. *Boker,* 150 U. S. 312, 14 Sup. Ct.
99, 37 L. Ed. 1093; *National Bank of Augusta* v. *Goodyear,* 90
Ga. 711, 16 S. E. 962.   "It is not incompatible with the notion
of agency that the compensation of an agent to sell goods shall
be the difference between the amount of purchase money received
by him for goods sold and the price fixed by the principal,
or that he shall have for his services all money received by him
in excess of the invoice price.   He may as well be compensated
in this way as by an allowance of a commission upon the gross
proceeds." (1 Clark & Skyles on Agency, 21; see, also, *National
Bank of Augusta* v. *Goodyear,* 90 Ga. 717, 16 S. E. 962; *Barnes
Safe & Lock Co.* v. *Bloch Bros. Tobacco Co.,* 38 W. Va. 158,
45 Am. St. Rep. 846, 18 S. E. 482, 22 L. R. A. 850; *Arbuckle*
v. *Kirkpatrick,* 98 Tenn. 221, 60 Am. St. Rep. 854, 39 S. W.
3, 36 L. R. A. 285.)

Upon breach of a contract like the one at bar, loss occasioned
thereby may be proved by evidence of the profits which would
have been made if the breach had not occurred.   (*Lambert* v.
*Haskell,* 80 Cal. 611, 22 Pac. 327; *Hawthorne* v. *Siegel,* 88 Cal.
159, 22 Am. St. Rep. 291, 25 Pac. 1114; *Tahoe Ice Co.* v. *Union
Ice Co.,* 109 Cal. 242, 41 Pac. 1020; *Shoemaker* v. *Acker,* 116
Cal. 239, 48 Pac. 62; 1 Sutherland on Damages, sec. 64.)

"In an action for breach of contract, where the damages are
such as would be necessarily sustained from the act of which
plaintiff complains, allegations as to special damages are unneces-
sary." (*Bussard & Robson* v. *Hibler,* 42 Or. 500, 71 Pac. 642;
see, also, *Johnson* v. *Gilmore,* 6 S. D. 276, 60 N. W. 1070; *Palmer*
v. *Clark,* 52 Wash. 345, 100 Pac. 749; *Tahoe Ice Co.* v. *Union Ice
Co.,* 109 Cal. 242, 41 Pac. 1020.)

MR. JUSTICE HOLLOWAY delivered the opinion of the
court.

This is an action for damages for the breach of a contract.
The complaint alleges that in December, 1904, plaintiff and
defendant entered into a contract, by the terms of which it was

agreed that plaintiff should become the exclusive agent for defendant in handling, in the city of Butte, the matches manufactured by the Union Match Company of Duluth, and that during the continuance of such contract no person other than plaintiff should .sell or offer for sale, in said city, any of the goods mentioned. A consideration for the contract is then pleaded, and it is alleged that the plaintiff has fully kept and performed all the covenants of the agreement by him to be kept and performed; but that, in March, 1908, while the contract was still in full force and effect, the defendant wrongfully sold to divers and sundry persons in Butte 823 cases of matches manufactured by the Union Match Company of Duluth, to plaintiff's damage in the sum of $384. After admitting the allegation that defendant company is a corporation, the answer is, in effect, a general denial of all the other allegations of the complaint. A trial in the district court resulted in a verdict in favor of the plaintiff, and from the judgment entered thereon, and from an order denying it a new trial, the defendant appealed.

1. The testimony offered by plaintiff tends to show the making of an agreement, in terms substantially as set forth in the complaint. The agreement, however, was made between plaintiff and C. S. Draper, a traveling salesman for the defendant company, who, the evidence shows, did not have any authority to make a contract of that character. For the purpose of showing a subsequent ratification, by the defendant company, of Draper's unauthorized act, the plaintiff introduced in evidence, without objection, a letter received by him from the defendant company, as follows:

"Duluth, Minn., Dec. 30, 1904.

"Mr. Swend Carlson, Butte, Mont.—

"Dear Sir: We are in receipt of your favor of the 25th. In reply would state that we have withdrawn our match account from Baldwin & Co. so you need have no fear from that source. We understood from Mr. Draper that you were to have the agency for Butte, Mont., and will see that you are protected. Mr. Draper will probably leave in a few days and will see you

as soon as possible. You certainly have a good thing in the agency of the matches in your city, and we trust you will be able to send us a great many car load orders. Wishing you a Happy New Year, we are,

> "Yours very truly,
>> "STONE-ORDEAN-WELLS CO.
>>> "J. E. G."

Plaintiff also offered evidence to show that, for more than three years after making the contract, the defendant company acquiesced in it, received the benefits from it, and carried it out according to its terms, as contended for by the plaintiff. The evidence offered by the defendant is, in effect, a denial that any such contract was ever entered into or existed between the parties, and an assertion that the business relations between them were those only of seller and buyer of goods in the ordinary course of trade, as between the defendant, a wholesale house or distributer of the goods in question, and the plaintiff, a jobber residing in Butte, without any exclusive right in the plaintiff to handle the goods there. There was not any attempt made by defendant, however, to explain the letter quoted above. It went to the jury with plaintiff's testimony as to his agreement with Draper, and the undisputed fact that for more than three years after December, 1904, the defendant did not sell or attempt to sell, to anyone else in Butte but the plaintiff, any matches manufactured by the Union Match Company.

In 2 Encyclopedia of Law and Practice, 868, it is said: "The conduct of the principal will be liberally construed in favor of a ratification or adoption of the acts of the agent, and slight circumstances will sometimes suffice to raise the presumption of ratification." In 1 Clark & Skyles on the Law of Agency, section 137, it is said: "As a general rule, a principal's acts will be liberally construed in favor of a ratification." It is an essential element of ratification that the principal shall have full knowledge of all material facts, unless he intentionally and deliberately ratifies when he knows that he has not such knowledge. "But if the principal has acquiesced for a number of years and

has received the benefits of an unauthorized contract, he could not be relieved from any further obligation, because he had but recently discovered a fact that he should have ascertained, and which the law presumes that he did ascertain, long before.'' (1 Clark & Skyles on the Law of Agency, sec. 107.)

In view of these rules, which we adopt as reasonable, we think it was for the jury to say whether, at the time the letter above was written, the defendant company was in possession of all the material facts respecting the agreement made between plaintiff and Draper, and whether, in writing the letter, it intended to approve the act of Draper in making such agreement, since ratification is generally the creature of intent. (2 Ency. of Law & Pr. 867.) The jury, by the general verdict rendered under proper instructions, having answered that the defendant company was possessed of such facts and did intend to approve and adopt Draper's act as its own, we think the letter itself was sufficient for the purpose and evidences a complete ratification. ''All that the law requires is such a manifestation of the intent of the principal to adopt the act of the agent as would lead the ordinarily prudent man to conclude that the principal has assented.'' (1 Clark & Skyles on the Law of Agency, sec. 128.)

2. Objection was made in the trial court to the introduction in evidence of a paper designated a ''distribution list.'' This was a list made for the defendant company and used by it. It shows the persons to whom the defendant made sales and the extent of such sales, and was admissible in connection with the testimony of the witness Youlden, to show the extent of the breach of the contract by defendant, and as some evidence to be considered by the jury in determining the damages recoverable by the plaintiff. (*Wakeman* v. *Wheeler & Wilson Mfg. Co.*, 101 N. Y. 205, 54 Am. Rep. 676, 4 N. E. 264.) But it is urged that this list refers exclusively to two certain brands of matches, the ''Stay Lit'' and ''Tip Toe,'' neither of which had ever been handled by plaintiff, and neither of which was manufactured at the time the alleged contract was made. There is some evi-

dence in the record which tends strongly to show that these matches were in fact substantially the same as matches carried by the plaintiff, but put up in different boxes and differently labeled. However, this is not of great consequence; for, if plaintiff's version of the agreement is to be taken as true, the contract gave him the exclusive right to sell, in Butte, all matches manufactured by the Union Match Company at any time during the life of the contract.

3. It is urged that the complaint does not state a cause of action, for the reason that it does not appear therefrom the duration of the alleged contract. But the fact that the agreement does not fix its duration is not any valid objection to it. The books abound with references to such contracts. Treating of a somewhat similar agreement, the supreme court of New Hampshire, in *Saddlery Hdw. Mfg. Co.* v. *Hillsborough Mills,* 68 N. H. 216, 73 Am. St. Rep. 569, 44 Atl. 300, said: "As the contract not to sell contains no limit as to time, the reasonable construction is that the parties intended it to continue so long as necessary to protect the plaintiffs from competition in the sale of the goods purchased." It appears that for more than three years prior to March, 1908, the plaintiff had been purchasing from defendant these matches in carload lots, and, at the time of the alleged breach, had on hand a considerable quantity of such goods. Applying to the facts of this case the rule announced by the New Hampshire court—which appears to us to be correct—it would seem that these parties must have contemplated that the defendant company would give to the plaintiff a reasonable opportunity to dispose of the goods which he had on hand, before it entered the field in competition with him; and whether, under all the circumstances, the plaintiff was given such opportunity, was a question for the jury to determine. While, under such circumstances, one party may have the power to terminate the contract at will, or at least upon notice, he does not have the right to do so at all times. He cannot, without rendering himself liable, revoke the contract so as to work an

injury to the other, with reference to what has already been done under the contract.

4. It is argued that the evidence does not show that the relation of principal and agent existed between the parties to this action. But it is wholly immaterial whether it does or not. It is true that both parties spoke of their agreement as one of exclusive agency, and just such contracts are frequently given that designation in the books. However, it seems clear to us that the proper interpretation of such a contract is that the defendant company would sell the goods mentioned in the city of Butte exclusively through the agency—that is, the instrumentality—of the plaintiff; and effect will be given to the agreement without reference to the technical designation attached to it by the parties themselves.

5. It is further urged that the complaint is insufficient to support a judgment for special damages. The objection, however, assumes that special damages were recovered. In *O'Brien* v. *Quinn*, 35 Mont. 441, 90 Pac. 166, we stated the general rule applicable to circumstances such as appeared from the record in that case to be that loss of profits is to be classed as special damages, and that rule has the approval of the authorities generally. But where the very object of, and inducement to, a particular contract, are the profits which are to accrue to one of the parties to it, and these facts are understood by both in making and carrying out the agreement, so far as it is carried out, then, for a wrongful breach of that contract by the other party to it, the one whose profits are thus cut off may recover his loss of profits as general damages, upon the theory that such loss will necessarily result from the breach of that character of contract. The general principle underlying this rule was early stated by Judge Cooley, in *Burrell* v. *New York & Saginaw Salt Co.*, 14 Mich. 34, a leading case which has been followed repeatedly in this country. (See, also, 8 Am. & Eng. Ency. of Law, 2d ed., 622; *Tahoe Ice Co.* v. *Union Ice Co.*, 109 Cal. 242, 41 Pac. 1020.) We think the present case falls within

the rule just announced, and that recovery was had for general damages only.

6. That loss of profits may be recovered as an element of damages for the breach of a contract is not now an open question. In *Hoge* v. *Norton*, 22 Kan. 374, Mr. Justice Brewer, speaking for the court, said: "The old idea that profits were never recoverable was long since exploded; and now, even in actions on contract, it is said that they may be recovered when proximate and certain. 'The general rule is that the party injured by a breach of a contract is entitled to recover all his damages, including gains prevented as well as losses sustained, provided they are certain and such as might naturally be expected to follow the breach. It is only uncertain and contingent profits, therefore, which the law excludes.' " This was approved in *Brown* v. *Hadley*, 43 Kan. 267, 23 Pac. 492. And in effect the same rule was applied by this court in *Brazell* v. *Cohn*, 32 Mont. 556, 81 Pac. 339. (See, also, *Pacific Steam Whaling Co.* v. *Alaska P. Assn.*, 138 Cal. 632, 72 Pac. 161.) The measure of plaintiff's recovery was the profits lost to him by reason of the sales made by the defendant, in so far as it is reasonably certain that the plaintiff would have made like sales but for the wrongful act of the defendant. (*Long* v. *O'Bryan*, 28 Ky. Law Rep. 1062, 91 S. W. 659.) In *Emerson* v. *Pacific C. & N. Packing Co.*, 96 Minn. 1, 113 Am. St. Rep. 603, 104 N. W. 573, 1 L. R. A., n. s., 445, and in the very complete notes to that case as reported in 6 Am. & Eng. Ann. Cas. 973, and in *Wilson* v. *Wernwag*, 217 Pa. 82, 66 Atl. 242, and notes to same in 10 Am. & Eng. Ann. Cas. 649, there is to be found such a very exhaustive treatise of the subject—loss of profits as an element of damages, and the measure of damages in such cases—that we deem it unnecessary to review the authorities upon the subject. It is sufficient to say that the views we have adopted have the support of the great weight of modern authority.

It is urged that the evidence is insufficient to show that the plaintiff would have sold the 823 cases of matches if the de-

fendant had not done so. There is some evidence in the record tending to prove that prior to March, 1908, plaintiff, at considerable trouble and expense to himself, had built up an extensive and profitable business in these matches in Butte in selling the same to the retail trade; that when Draper and Casey, agents for the defendant company, came to Butte in March, 1908, and called upon plaintiff to solicit a further carload order from him, they found plaintiff with a quantity of the goods on hand, and, in order to assist in disposing of the goods then in stock that the new order might be received, these agents of the defendant proposed to assist the plaintiff's salesman in soliciting orders from the merchants in Butte, and plaintiff sent his salesman with these agents among the plaintiff's customers and others; and the result of the work was the sale of 200 or more cases of matches which the plaintiff had on hand, and also the sale of 823 cases of matches of the "Tip Toe" and "Stay Lit" brands. The plaintiff having demanded that he be allowed his commission on the sale of these 823 cases, and his demand having been refused, a controversy arose, resulting in the defendant company distributing these matches, when they arrived in Butte, through another merchant there. There is some evidence that with one exception, or possibly two exceptions, the persons to whom these 823 cases were sold had been customers of plaintiff theretofore, and were such thereafter; that, as soon as these 823 cases were received and distributed among the retail dealers in Butte, plaintiff's business in the sale of matches was practically suspended for some six months, until those matches had been sold and consumed, when his business was again restored. While it may have been impossible to prove that the plaintiff would have sold precisely 823 cases of these matches if defendant had not done so, still, in view of the fact that plaintiff was in equally as good position to make the sales as the agents of the defendant, who were strangers in Butte, apparently, and in view of the further fact that plaintiff did contribute to make these sales, to the extent at least

that his own salesman assisted them by going with them and introducing them to the Butte merchants; and in view of the further fact that the amount of the sales actually made by defendant is not in dispute, and that the jury had before them the percentage of profit which plaintiff was making upon his sales of matches—we think there is in this record sufficient evidence upon which the jury could estimate with reasonable certainty the damages which the plaintiff sustained by the wrongful act of the defendant, basing such damages upon the profits which he lost on the sale of the goods which it is reasonably certain he would have made, but for the sale by the defendant. (*Whorley* v. *Tennessee Centennial Exposition Co.* (Tenn. Ch. App.), 62 S. W. 346.)

We do not find any error in the record. The judgment and order are affirmed.

*Affirmed.*

MR. CHIEF JUSTICE BRANTLY and MR. JUSTICE SMITH concur.

Rehearing denied March 8, 1910.