## JOHNSON v. HISLOP.

(Circuit Court of Appeals, Ninth Circuit. May 2, 1921.)

No. 3511.

1. **Sales ⬯416(2)—Evidence of market value of sheep held admissible to show damages for breach of contract.**

Under Rev. Codes Mont. §§ 6056 and 6082, prescribing the measure of damages for breach of a contract for sale of personal property, evidence that the fair market value of sheep of the kind specified in the contract at the time the sheep should have been delivered was $1 per head more than the contract price was competent.

2. **Sales ⬯418(15)—Ascertained profits lost by breach of contract may be recovered.**

Where a buyer of sheep had made a contract to resell them at $1 per head more than he was to pay for them, he can recover in an action for breach of the contract of sale the loss of the profits he would have made on the resale, which was a fixed and certain sum, definitely ascertained, though he could not recover profits which were a mere matter of speculation.

3. **New trial ⬯97—Instruction on burden of proof held not to entitle defendant to grant for surprise, where no exception was taken.**

In an action for breach of contract for the delivery of sheep, defendant is not entitled to new trial, on the ground that the court's instruction that the burden was on him to prove that the sheep he tendered were of the age called for by the contract was a surprise to him, because plaintiff had assumed the burden of proof at the trial, where he did not except to the instruction at the time for that reason, and in his motion for new trial nothing was said about having been taken by surprise or at a disadvantage by the instruction, and no showing was made that he could have produced additional evidence to maintain his case, if he had known the burden was on him.

4. **Sales ⬯421—Instruction on "burden of proof" of delivery held correct.**

In an action for breach of a contract for the sale of sheep, an instruction that plaintiff need only prove he had a contract and that the sheep were not delivered, and that the burden was then on defendant to satisfy the jury that the sheep tendered conformed to the contract, and then defined the burden of proof as the preponderance of the proof, the greater weight of the testimony, was not erroneous; the first paragraph of the instruction referring to "burden of proof" in the sense of the duty of the party who has the affirmative of an issue to establish it prima facie, and the latter part relating to its meaning as the duty of a party to establish the existence of a fact by evidence which preponderates in its favor.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Burden of Proof.]

5. **Appeal and error ⬯301—Instruction requiring defendant to satisfy jury held not to require reversal, where not objected to in motion for new trial.**

An instruction that the burden was on defendant to satisfy the jury that the affirmative defense was true, followed by a correct definition of the burden of proof, does not require reversal as imposing on defendant the duty to establish the defense beyond doubt, where no objection to the use of the word "satisfy" was made at the time or in the motion for new trial.

In Error to the District Court of the United States for the District of Montana; George M. Bourquin, Judge.

Action by William Hislop against Jacob Johnson. Judgment for plaintiff, and defendant brings error. Affirmed.

Gibson & Smith and Miller, O'Connor & Miller, all of Livingston, Mont., for plaintiff in error.

William Wallace, Jr., John G. Brown, and T. B. Weir, all of Helena, Mont., for defendant in error.

Before GILBERT, MORROW, and HUNT, Circuit Judges.

MORROW, Circuit Judge. This is an action for an alleged breach of contract for the sale by the defendant to the plaintiff of 1,300 head of two and three year old sheep, to be delivered by the defendant May 5, 1918. A copy of the contract is set forth in the record as Exhibit A. The sum of $3,000 was paid down on the sheep by the plaintiff; the balance to be paid on delivery of the sheep described in the contract. The testimony shows that the plaintiff went to the place of delivery with sheep experts and refused the sheep because they were older than the contract called for, and thereafter he sued for damages, and the return of the $3,000 which he paid down.

Among other things, the plaintiff alleged that the defendant tendered and tried to compel plaintiff to accept 1,300 head of sheep that were older than the contract called for, and also alleged that 90 per cent. of the sheep owned by the defendant and offered by him to the plaintiff did not comply with the terms of the contract, as they were too old. Plaintiff also alleged that, after making the contract, he had secured a purchaser who would buy the sheep at a profit to him of $1 per head, provided the sheep were as described in the contract. The plaintiff asked for the profit as stated and for the return of the "down payment."

The defendant's answer is a general denial, except that he admitted owning the sheep described in the contract, the making of the contract, and the receipt of $3,000, the down payment. The case was tried upon these pleadings before the court and a jury, and verdict was found in favor of the plaintiff and against the defendant for the sum of $4,300, with interest. Judgment was thereafter entered thereon, from which this writ of error has been taken.

[1] The first objection to the proceedings in the lower court relates to the measure of damages which the plaintiff claims to have sustained by reason of the failure of the defendant to deliver the sheep in accordance with the terms of the contract. George Melton was a witness on behalf of the plaintiff, and testified that he resided at Dillon, Mont., and was in the live stock business, chiefly the sheep business. He was familiar with the buying and selling of sheep in April and May, 1918. He was asked:

"What have you to say as to whether or not $26 per head for ewes such as these, unshorn, aged two and three years, would be a fair market price at that time?"

The defendant objected to this question, on the ground that it was irrelevant, incompetent, and immaterial. The objection was overruled and the witness answered:

"We considered the price of $26 a fair market value."

Section 6056 of the Revised Codes of Montana of 1907 provides:

"The detriment caused by the breach of a seller's agreement to deliver personal property, the price of which has not been fully paid in advance, is deemed to be the excess, if any, of the value of the property to the buyer, over the amount which would have been due to the seller under the contract, if it had been fulfilled."

Section 6082 of the same Code provides:

"In estimating damages, * * * the value of property to a buyer or owner thereof, deprived of its possession, is deemed to be the price at which he might have bought an equivalent thing in the market nearest to the place where the property ought to have been put into his possession, and at such time after the breach of duty upon which his right to damages is founded as would suffice, with reasonable diligence, for him to make such a purchase."

[2] It was alleged in the complaint that plaintiff was engaged in the business of buying and selling sheep; that he obtained and had purchasers for the sheep, who were ready, willing, and able to purchase said sheep at a price that would yield the plaintiff a profit of $1,300. As the contract called for the delivery of 1,300 sheep, the profit would have been $1 per head. This profit was not remote and uncertain, and was not a matter of speculation, but was a fixed and certain sum, definitely ascertained and determined for the time of the breach. As stated by the Supreme Court of the United States in Anvil Mining Co. v. Humble, 153 U. S. 540-549, 14 Sup. Ct. 876, 879 (38 L. Ed. 814):

"Profits which are a mere matter of speculation cannot be made the basis of recovery in suits for breach of contract, while profits which are reasonably certain may be."

The court cites the case of Howard v. Stillwell & Bierce Mfg. Co., 139 U. S. 199-206, 11 Sup. Ct. 500, 503 (35 L. Ed. 147) where Mr. Justice Lamar has said:

"But it is equally well settled that the profits which would have been realized, had the contract been performed, and which have been prevented by its breach, are included in the damages to be recovered in every case where such profits are not open to the objection of uncertainty or of remoteness, or where from the express or implied terms of the contract itself, or the special circumstances under which it was made, it may be reasonably presumed that they were within the intent and mutual understanding of both parties at the time it was entered into."

In Brazell v. Cohn, 32 Mont. 556, 567, 81 Pac. 339, the Supreme Court of Montana followed the same rule in an action for breach of contract on the part of the purchaser, holding that the seller was entitled to recover the difference between the market price and the contract price of the article sold, at the time of sale.

We think the evidence was properly admitted.

The next objection is that the court instructed the jury:

"The plaintiff proving that he had a contract, and that he went to get delivery of the sheep, and that he didn't get them, is about as far as he needs to go. The burden is upon the defendant to satisfy you that those sheep were of the age that the contract called for. The burden of proof is not upon the plaintiff to prove to your satisfaction the ages of those sheep were greater than the contract called for. The burden is upon the defendant to satisfy you that the sheep were of that age that the contract called for; that he, de-

fendant, performed his contract. What means the burden of proof? It means the preponderance of the proof; the greater weight of the testimony.

"It is the duty of the defendant, in so far as the age of the sheep is concerned to produce evidence that will satisfy you that the ages of the sheep are as required to be by the contract. The question is: Has he done it?"

To understand the application of this instruction to the case before the court, it is necessary to consider the character of the controversy as it appears from the terms of the contract and in the pleadings and evidence. The plaintiff, Hislop, testified that he heard of the Johnson sheep in February, 1918, but at that time he was not particularly interested in their purchase, as he was handling another band of 1,300 sheep at Billings, Mont. Having disposed of this band, he turned his attention to the defendant's sheep, and went to Big Timber to see Johnson about them. He told Johnson he was interested in getting young ewes—two's and three's. Johnson said he had them. He told Hislop that they were two and three year old ewes. A written contract was thereupon entered into by Johnson and Hislop, dated March 2, 1918, wherein the former bargained and sold, and agreed to deliver to Hislop, approximately 1,300 two and three year old half-blood Cotswold and Rambouillet ewes.

In consideration of the sale and delivery of these sheep by Johnson to Hislop, the latter agreed to pay for the sheep the sum of $25 per head. Upon the execution of the contract Hislop was to pay Johnson $3,000, and was to pay the remainder of the purchase price upon the delivery of the same as provided in the contract. The ewes and lambs were to be delivered by Johnson to Hislop sound and free from scab, loco, or any other contagious or infectious diseases, and they were to be delivered at the Briggs & Ellis ranch at Big Timber, Mont., on May 5, 1918, and upon delivery of the sheep by Johnson, Hislop should have the right to cull and throw out, before receiving the same, any cripples, and every ewe was to be delivered unshorn. Johnson also agreed to care for said ewes described in the contract and to deliver them in good condition to Hislop. In seven different clauses of this contract Johnson agreed to deliver the sheep described in the contract, and in the description of the sheep was the specific requirement that they should be two and three years old. Hislop was not required to accept, receive, or pay for any sheep (except the part payment of $3,000) until Johnson had delivered to him the sheep described in the contract.

This action is based upon that contract. It was commenced May 14, 1918, or nine days after the alleged breach on the part of the defendant. It is alleged that the plaintiff made the down payment of $3,000 as therein provided; that on May 5, 1918, plaintiff appeared at Big Timber, Mont., ready, able, and willing to comply with the terms of the contract as required of him, and asked the defendant for the delivery of the sheep described in the contract. It is alleged that defendant did not comply with the terms of the contract and had refused and neglected, and at the time of the filing of the complaint still refused, to deliver the 1,300 head of sheep in accordance with, and as described in, the contract. The answer to this complaint ad-

mits the making of the contract and the part payment of $3,000, but denies generally the other allegations of the complaint.

The plaintiff's testimony supported the allegations of the complaint in all the essential particulars. He stated, further, that at the time he went to receive the sheep he went prepared to make an examination of the sheep, to determine whether or not they qualified under the contract. For that purpose he took experts with him to determine the ages of the sheep. Four hundred and four sheep were examined by them. The defendant and his herder handled the milling around of the sheep in order to get a fair average. The fair average is not denied. The experts testified that the result of the examination was as follows: One ewe two years old; 33 ewes three years old; 236 ewes four years old; 134 ewes five and eight years old—total, 404 ewes; 404 ewes, of which 34 were two and three years old and 370 older than two and three years, or 91.61 per cent. of the ewes older than the sheep called for in the contract.

The defendant was called as a witness in his own behalf. He testified that he bought some sheep in the fall of 1917. He bought 1,350 head. Their ages were two's and three's. There were a few old sheep among them, that happened to get in there. He did not know how many there were, because he never counted them. There should have been 1,350 head of two's and three's in that band. He had a chance to slip a few. Before he picked them out, there were some 3,000 sheep in that band, and they culled out the sheep, and there were supposed to be 1,350 head or more of these two's and three's—that is, when he bought them. He bought them in the fall of 1917.

Concerning the examination of the sheep on the morning of May 5, 1918, he said, among other things, that there were a few over 400 sheep there that morning. He assisted in the mouthing of these sheep. Some were coming four's and some were coming three's. Their ages on March 2, 1918, were two's and three's. He saw 3 or 4 that were over four years old when he was mouthing them. He did not intend that the sheep that were over four years old were to be included in the contract of sale to Mr. Hislop. Other witnesses were called by the defendant, and testified in a general way as to the age of the sheep, all admitting that some were over four years of age; but none of the defendant's witnesses kept such account or tally of the sheep examined that any satisfactory analysis of their testimony can be made from the record, but such an analysis is not required in determining the question before us.

[3] The defendant's complaint is that plaintiff assumed the burden of proof in introducing the evidence; that he called as witnesses an array of pretended expert sheep men to show that the sheep were older than the contract called for; that throughout the trial the case was tried upon the theory that plaintiff had the burden of proof, and after all of the evidence was in, and after the argument of counsel, the court instructed the jury that the burden was upon the defendant to satisfy the jury that the sheep were of the age called for in the contract; that defendant might well claim that he was surprised and placed at a disadvantage at a time when the case had been practically

closed. But the exception taken by the defendant to the instruction, was not that he had been taken by surprise or at a disadvantage, and in his motion for a new trial nothing was said about having been taken by surprise or at a disadvantage by the instruction, and no showing was made that had he known that the burden was upon himself he could have produced evidence to maintain his case upon that theory.

[4] The phrase "burden of proof" has more than one meaning. In one sense it is a rule of procedure applied to the duty of the party at any particular time during the trial, when he has the affirmative of an issue to establish the prima facie affirmative of that issue. Another meaning is the duty of a party to establish the existence of a certain fact or set of facts by evidence which preponderates to a legally required extent. A Preliminary Treatise on Evidence at the Common Law, by Thayer, p. 355; 16 Cyc. 926.

In this case the plaintiff alleged in his complaint that on the 5th of May, 1918, he appeared at Big Timber, Mont., ready, willing, and able to comply with the terms of his contract, and asked the defendant for the delivery of the sheep described in the contract; that defendant refused and neglected, and at the time of the filing of the complaint still refused, to deliver to the plaintiff the sheep described in the contract. At the trial plaintiff introduced testimony tending to establish prima facie the affirmative of that issue. He did more. He introduced testimony tending to establish that issue by a preponderance of evidence, anticipating that the defendant might attempt to establish the affirmative of his defense that he did deliver the sheep described in the contract.

The court in the instructions to the jury used the phrase: "Burden of proof" in the first sense, and applied it to the plaintiff when it said:

"The plaintiff proving that he had a contract, and that he went to get delivery of the sheep, and that he didn't get them, is about as far as he needs to go."

The court thereupon, referring to the duty of the defendant to maintain his affirmative defense that he had tendered the sheep described in the contract, said:

"The burden is upon the defendant to satisfy you that those sheep were of the age that the contract called for. The burden of proof is not upon the plaintiff to prove to your satisfaction the ages of those sheep were greater than the contract called for. The burden is upon the defendant to satisfy you that the sheep were of that age that the contract called for; that he, defendant, performed his contract."

The court then proceeded to define the term "burden of proof" as used in the instruction:

"What means the burden of proof? It means the preponderance of the proof; the greater weight of the testimony. It is the duty of the defendant, in so far as the age of the sheep is concerned, to produce evidence that will satisfy you that the ages of the sheep are as required to be by the contract."

The defendant had testified that he bought the sheep on the 16th day of October, 1917; that he bought 1,350 head; that their ages were two and three years old at that time, but he qualified this statement with the admission that there were a few old sheep among them, that

happened to get in there; that he did not know how many there were, because he never counted them. He said there should have been 1,350 head of two's and three's in that band; he had a chance to slip a few; before he picked them out there were some 3,000 sheep in that band, and they culled out the sheep, and there were supposed to be about 1,300 head or more of these two's and three's—that is, when he bought them; they mouthed them one day, and got through just about dark, and there was a fence between the sheep that was rather weak, and they did not get there to count them that evening, and a few must have broken through that fence during the night; the old sheep were in the upper corral, and that is the way he happened to get a few old sheep in them. This was when he bought the sheep on October 17, 1917. Four and a half months later on, March 2, 1918, without any further examination, he sells the sheep to plaintiff for two and three year old sheep. We think that under the pleading and this state of the proof, with the natural and reasonable inferences the jury might draw therefrom, the instruction was clearly right.

[5] But it is objected further in this court that the trial judge instructed the jury that the defendant must "satisfy" them that the ages of the sheep were as required by the contract. It is contended that this instruction means that the defendant must establish that fact free from doubt and uncertainty; that the question must be set at rest. But the judge told the jury, in the very clause of the instruction in which the word was used, that the burden of proof means "the preponderance of the proof; the greater weight of the testimony." No objection was made to the use of the word "satisfy," either in the instruction or in the motion for a new trial.

Rule 11 of this court (208 Fed. vii, 124 C. C. A. vii) provides that errors not assigned will be disregarded, but the court at its option may notice plain error not assigned. We do not think this was a plain error in the connection in which the word was used. In Sherman v. Indianapolis Traction & Terminal Co., 48 Ind. App. 623, 626, 96 N. E. 473–475, the court said with respect to a similar instruction, which it did not commend, but did not reverse:

"This court has repeatedly decided that an instruction that in substance informs the jury that a party having the burden of proof as to a certain fact or issue must establish it to the satisfaction of the jury by a fair preponderance of the evidence is not reversible error, where the other instructions in the case clearly define what is meant by a preponderance of the evidence and distinctly advise them that a preponderance of the evidence will be sufficient to justify a finding in favor of the party having the burden. In such cases it is held that the words 'to satisfaction of the jury' are equivalent to 'find' or 'believe.' "

See, also, Baltimore & O. S. W. R. Co. v. Walker, 41 Ind. App. 588, 84 N. E. 730–735.

We do not commend the use of the word "satisfy" in the instruction before us, but we do not think it misled the jury to the prejudice of the defendant.

The plaintiff, in support of the judgment of the court below, probably out of abundant caution, refers to section 6593 of the Revised Codes of Montana, providing that no judgment shall be reversed by

reason of any error in the proceedings which does not affect the substantial rights of the parties. Substantially the same provision is now contained in section 269 of the act to codify, revise, and amend the laws relating to the judiciary, as amended by the Act of February 26, 1919 (40 Stat. 1181 [Comp. St. Ann. Supp. 1919, § 1246]).

We find no difficulty, therefore, in affirming the judgment of the District Court; and it is so ordered.